199 So.2d 770 (1967)
The PHOENIX INSURANCE COMPANY, a Corporation, Appellant,
v.
Francis K. KINCAID and Frances Kincaid, His Wife, Appellees.
No. I-124.
District Court of Appeal of Florida. First District.
June 13, 1967.
Rehearing Denied July 6, 1967.
*771 Cliff B. Gosney, Jr., Daytona Beach, for appellant.
Paul R. Stern, Daytona Beach, for appellees.
RAWLS, Chief Judge.
A set-off clause against the uninsured motorist coverage afforded in an automobile liability insurance policy is the subject matter of the controversy between these parties.
Appellees Kincaids purchased from Appellant Insurance Company an insurance policy entitled "Family Combination Automobile Policy." On June 26, 1965, Mr. and Mrs. Kincaid were severely injured in an automobile accident caused by the negligence of an uninsured motorist. The Kincaids filed a demand for arbitration and a complaint in this cause seeking a declaratory decree to determine the effect of paragraph 6(d) of the family protection coverage endorsement which included uninsured automobile coverage in the minimum statutory amounts. The section in dispute reads:
"(d) the company shall not be obligated to pay under this Coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under the Medical Payments Coverage of the policy."
The parties stipulated that the policy was in effect at the time of the accident, that injury was caused by the negligence of an uninsured motorist, and that the sole question was whether condition 6(d) of the endorsement is valid. Upon the foregoing facts the chancellor entered his final decree finding that condition 6(d) was void since it was inconsistent with the insurance code and with public policy.
The stage is thus set for Appellant's sole point on appeal, viz.: Is the defendant entitled to a set-off against the uninsured motorist arbitration award for the amount of payments made under the medical payments provision coverage afforded by the same policy of insurance?
The subject policy, in consideration of payment of specified sums of money for *772 each type of coverage, provided insurance for bodily liability, property damage, medical payments, comprehensive, collision, and family protection which includes uninsured motorist coverage. The bodily injury and property damage coverages are activated by the negligence of those insured under the provisions of the policy while operating an insured automobile. The provision for uninsured motorist protection comes into play only in the case of an accident caused by the negligent operation of an uninsured automobile. The medical payment coverage is a distinct type of separate coverage in that the question of negligence is of no import as to the liability of the insurance company to the insured, for in this instance the benefits are payable as a matter of right in the case of an accident involving an insured automobile. A further distinction is that the liability and uninsured motorist coverages have been classified as proper subjects of legislative concern, while the medical payment coverage is a matter of voluntary purchase on the part of the insured without any nudging from the legislature.
Superfluous as it may seem, once again we are forced to call attention to Section 627.0851, Florida Statutes, F.S.A., wherein the legislature has required that there shall be included in every automobile liability insurance policy, or supplemental thereto, uninsured motor vehicle coverage "in not less than" certain minimum amounts except where the insured named in the policy "shall reject the coverage." Here the uninsured motorist coverage was supplemental to the policy; that is, it was contained in an endorsement to the policy. In spite of the minimum statutory amounts, the uninsured motorist endorsement attached to this policy attempts to reduce the statutory limits of liability by several provisions known as set-off clauses, other-insurance clauses, etc. Only one of these is being tested in this action. However, there is no claim or showing that the insured named in this policy has rejected the statutory minimum coverage.
This court considered a question similar to the one presented here in Standard Accident Insurance Company v. Gavin.[1] There Gavin was killed in an automobile accident in the course of his employment due to the negligence of an uninsured motorist. Gavin was insured by Standard's policy of insurance which contained uninsured motorist coverage and provided a set-off clause for amounts received as workmen's compensation. Gavin's employer's workmen's compensation carrier was also Standard. This court sustained the trial judge's conclusion that "* * * the defendant insurance company was without power (in its policy) to limit its liability required by the statute * * *" and further reiterated its statement in Davis v. U.S. Fidelity & Guaranty Co. of Baltimore, Md.[2] that the uninsured motorist statute established the public policy of this state to be that every insured is entitled to recover damages he or she would have been able to recover if the offending motorist had maintained a policy of liability insurance. The Gavin decision was followed in Mason v. Allstate Insurance Company.[3]
In U.S. Fidelity & Guaranty Co. v. Sellers[4] this court was confronted with "double uninsured motorist coverage." There USF & G issued to Mr. and Mrs. Sellers an automobile liability policy providing uninsured motorist coverage. An uninsured motorist caused the accident which injured Mrs. Sellers which she was riding as a passenger in an automobile insured by a similar liability policy issued by Glenn Falls Insurance Company. The *773 limit of liability under the uninsured motorist provision of each of these policies was $10,000 for injury to each person. The Sellers claimed against Glenn Falls and settled with that company for $7,500.00. They then filed suit against their insurer, USF & G, claiming damages for the same injuries. USF & G defended upon an "excess insurance" clause contained in its policy entitled "5. Other Insurance." This court reversed the chancellor's declaratory decree which held that the Sellers were entitled to recover from USF & G. We certified the decision in the Sellers case to the Supreme Court of Florida as one which passed upon a question of great public interest. The Supreme Court in Sellers v. U.S. Fidelity & Guaranty Co.[5] quashed our decision, and in so doing it outlined the following principles of law to be applicable to uninsured motorist coverage:
1. Section 627.0851, Florida Statutes [F.S.A.], operates to invalidate condition 5 (other insurance clause) in the USF & G automobile liability policy.
2. There appears no latitude in the statute for an insurer to limit its uninsured motorist liability through "other insurance," "excess-escape" or "pro rata" clauses.
3. The statute does not intend that an insured shall pyramid uninsured motorist coverages so as to recover more than his actual damages, but the statute does not limit an insured only to one $10,000 recovery under said coverage where his damages are greater than $10,000 and he is the beneficiary of more than one policy issued pursuant to § 627.0851.
Therefore, three cases, Gavin, Mason and the Supreme Court's decision in Sellers have held unequivocally that "other insurance" clauses, attempting to set-off part of the insurer's liability under uninsured motorist coverage, are void.
At this stage of review our answer to the Appellant's point on appeal would have been one of simple affirmance, because the controlling principles of law were seemingly well settled to the effect that policy provisions allowing a set-off against uninsured motorist coverage are void even if the set-off is with other uninsured motorist coverage, as was the case in Sellers. How less void can be a set-off of an entirely separate and independent coverage (uninsured motorist and medical payments) for which two separate premiums were paid?[6]
But the decisions did not stop at this point of our analysis. The Third District Court of Appeal in Tuggle v. Government Employees Insurance Co.[7] was confronted with the same basic question here presented. There, Mrs. Tuggle was injured by an uninsured motorist. Her policy of insurance contained a provision permitting the uninsured motorist coverage to be reduced by the amount paid under the medical payments provision of the same policy. There it was held that the uninsured motorist coverage could be reduced by the sums paid for medical expense coverage upon the assumption "* * * that officials charged with a duty or authority to control rates for premiums will require that in policies containing such setoff provision the resultant reduction in value and quality of the medical payment coverage (which is what it amounts to) will be accompanied by a proportionate reduction in the premium charged for that coverage." The court distinguished its decision in Tuggle from our decision in Standard Accident Ins. Co. *774 v. Gavin, supra, upon the fact that in Gavin a third party paid the premium for one coverage. In effect it held  that which is void if contained in two policies is not void if written into one policy. Furthermore, the Tuggle decision did not attempt to recede from or to distinguish the controlling pronouncement in Gavin to the effect that a set-off provision "* * * against amounts payable to the insured for the uninsured motorist liability violated that announced [public] policy, as it would permit the insurer to pay less than the damages which would have been recoverable by the insured from the uninsured motorist had the latter held liability insurance." Although we hesitate to take issue with our brethern of the Third District Court, we have difficulty in completing the circle of logic of their reasoning. In Sims and Hack, supra, that court held the subject coverages in the policy were "separate and independent." In Sellers v. U.S. Fidelity & Guaranty Co., supra, the Supreme Court held that the subject statute granted no latitude for an insurer to limit its liability through "other insurance," "escess-escape" or "pro rata" clauses, not even when the set-off was with other uninsured motorist coverage. In Gavin, supra, we held the insured is entitled to recover the same amount he would have recovered if the offending motorist had maintained liability insurance. So in the Tuggle case, had the offending motorist been insured, Mrs. Tuggle would have been allowed to recover under the medical expense coverage and to recover the identical damages from the offending motorist. Further, the Tuggle decision reasons that the set-off amounts to a reduction of the medical payments coverage, but that is not what the language of the policy purported to do  it plainly reduced the minimum coverage afforded by the uninsured motorist provision or in other words, sought to establish a "set-off" of the type held to be void by the Supreme Court in Sellers. We cannot escape the conclusion that the decision of the District Court of Appeal, Third District, in Tuggle is clearly in conflict with the Supreme Court decision in Sellers and with our decision in Standard Accident Insurance Co. v. Gavin.
However, the Supreme Court apparently did not agree with our above conclusion when it entertained writ of certiorari in the Gavin case (196 So.2d 440.) In discharging the writ upon the ground that no conflict existed between Gavin and Tuggle, the court cited with approval the following principles of law: 1. The uninsured motorist statute became a part of the policy. 2. The set-off provision in Gavin would allow the insurer to reduce the minimum benefits below the statutory requirement and to an amount less than the amount of the uninsured motorist's liability, which is in violation of the statutory requirements. 3. The uninsured motorist statute "established the public policy of this state to be that every insured is entitled to recover under the policy the damages he or she would have been able to recover if the offending motorist had maintained a policy of liability insurance." The court then approved the Tuggle decision apparently upon the theory that the set-off did not violate the above quoted policy in that the total the insurer was required to pay under its uninsured motorist coverage was supplied and paid for under the separately contracted medical payments coverage. The Supreme Court's opinion in Gavin does not, in our view, comport with the clear language of the cases reviewed. To follow the rationale of the Tuggle case, a set-off clause is valid even though it would permit an insurance company to reduce below the statutory minimum its uninsured motorist coverage by the amount of any sums payable through a separate and independent coverage so long as both coverages are included in one policy.
*775 In reaching our decision in this case we note that had the Kincaid's policy provided for medical expense coverage in the sum of $10,000, and had each of the Kincaids suffered medical expenses in excess of this amount, the effect of the set-off clause would be to completely castrate the uninsured motorist coverage. So not only would the insurer pay nothing under the statutory coverage, but by its subrogation rights in subsection 627.0851(4) 327.085(4), it would be entitled  to the extent of its medical expense payment  to any proceeds recovered from the uninsured motorist. This is apparently true because the very foundation of the Tuggle decision is that the set-off provision "does not have the result of reducing the company's liability on the uninsured motorist coverage * * *." Under this reasoning payment of part or all of the insurer's liability under its medical expense coverage apparently would not have the result of reducing the amount of the insurer's claim against amounts recovered from the uninsured tort feasor. Seemingly, the reasoning of the Tuggle decision would permit subrogation for any set-off payments rather than solely for uninsured motorist payments as was the intent of the statute.
It is with reluctance that we decline to follow the conclusion reached by our sister court in Tuggle and apparently approved by the Supreme Court in Gavin. The inescapable conclusion reached by us is that the provisions of the instant insurance policy reduced the minimum coverage of an uninsured motorist provision below that prescribed by the legislature, and thus violated the established public policy of this state.
Affirmed.
CARROLL, DONALD K., and JOHNSON, JJ., concur.
NOTES
[1] Standard Accident Ins. Co. v. Gavin, 184 So.2d 229 (Fla.App.1st, 1966).
[2] Davis v. U.S. Fidelity & Guaranty Co. of Baltimore, Md., 172 So.2d 485 (Fla. App. 1st, 1965).
[3] Mason v. Allstate Insurance Co., 189 So.2d 907 (Fla.App.3d, 1966).
[4] U.S. Fidelity & Guaranty Co. v. Sellers, 179 So.2d 608 (Fla.App.1st 1965).
[5] Sellers v. U.S. Fidelity & Guaranty Co., 185 So.2d 689 (Fla. 1966).
[6] See Sims v. National Casualty Company, 171 So.2d 399 (Fla.App.3d, 1965) and Hack v. Great American Ins. Co., 175 So.2d 594 (Fla.App.3d, 1965) which held that uninsured motorist coverage and medical expense coverage are two separate and independent contract provisions.
[7] Tuggle v. Government Employees Insurance Co., 185 So.2d 487 (Fla.App.3d, 1966).