455 P.2d 1011

Conrad CABALLERO, Appellant,

v.

FARMERS INSURANCE GROUP, Appellee.

No. 2 CA–CIV 587.

Court of Appeals of Arizona.

June 20, 1969.

Rehearing Denied July 17, 1969.
Review Denied Sept. 30, 1969.

62

Miller, Pitt & Feldman, by Richard L. McAnally, Tucson, for appellant.

Chandler, Tullar, Udall & Richmond, by James L. Richmond, Tucson, for appellee.

MOLLOY, Chief Judge.

The issue in this litigation is the validity and construction of a provision in an automobile insurance policy which the insurer contends reduces the liability coverage to the extent of payments made under the "Medical Expense" coverage.

The facts are simple and without dispute. Appellant was injured while riding in a car driven by one Capoot. Capoot was an insured under an automobile policy issued in Arizona by appellee, containing both Bodily Injury Liability coverage, referred to as "Part I" of the policy, and Medical Expense coverage, referred to as "Part III" of the policy. Appellant commenced suit against Capoot, and eventually obtained judgment in the amount of $5,000. This figure was arrived at by additur, with the consent of Capoot, after a jury verdict in the amount of $2,500. Among the items of damage claimed by appellant in his action against Capoot, as indicated by pretrial memoranda, were medical expenses resulting from the accident in the amount of $706.20. These expenses were paid in full by appellee, prior to judgment, pursuant to the obligation of its Medical Expense coverage to pay " * * * all reasonable expenses actually incurred within one year from the date of accident * * *" to an injured guest occupant such as appellant. Part III of the policy relating to Medical Expense coverage contains the following provision:

"(1) Expenses Actually Incurred. 'Expenses actually incurred' means expenses for medical services * * * in excess of those paid or payable to or on behalf of any person * * * (b) as damages under Part I [the Bodily Injury Liability coverage] * * * and *all payments made to or on behalf of any person under this Part III shall be deemed to have been advanced under the coverage afforded by Part I * * *.*" (Emphasis added.)

After judgment, appellant received from appellee the sum of $4,376.01, which the parties agree included a principal payment of $4,293.80 on the $5,000 judgment, leaving a principal balance of $706.20, the amount of appellant's medical expenses paid by appellee prior to judgment.

Appellant instituted this garnishment proceeding against appellee for the $706.20,

asserting that the quoted provision was invalid and unenforceable because its enforcement tended to subvert the collateral source rule, and because it was contrary to the reasoning and holdings of certain decisions of our Supreme Court construing the Safety Responsibility Act, A.R.S. § 28–1101 as amended. The trial judge rejected these contentions and held that the appellee-garnishee was entitled to credit for its pre-judgment medical payments to or on behalf of appellant.

Appellant does not argue, in this court, the position taken by him in the lower court that the quoted policy provision undercuts the purpose and effect of the collateral source rule. *See,* for a discussion of this subject, the "Editorial comment" to the Annot., 11 A.L.R.3d 1115, at 1116–17. The same annotation collects cases considering the recoverability of medical expenses under both liability and medical expense coverages of an automobile policy in the absence of a credit provision such as the one in the present policy quoted above.

Appellant's sole thrust here is that the provision in this policy that payments under the "Medical Expense" coverage shall be deemed to be advanced under the liability coverage is a violation of the announced public policy of this state. To support this contention, appellant relies upon Sandoval v. Chenoweth, 102 Ariz. 241, 428 P.2d 98 (1967); Jenkins v. Mayflower Insurance Exchange, 93 Ariz. 287, 380 P.2d 145 (1963); Geyer v. Reserve Insurance Company, 8 Ariz.App. 464, 447 P.2d 556 (1968), and authorities from the State of Florida, especially Phoenix Insurance Company v. Kincaid, 199 So.2d 770 (Fla.App. 1967), certiorari dismissed, 211 So.2d 210 (Fla., 1968).

In *Jenkins,* our Supreme Court held that the provisions required by A.R.S. § 28–

1170 of the Safety Responsibility Act in a "* * * motor vehicle liability policy * * *" are to be deemed incorporated into every automobile liability policy issued in this state. The *Jenkins* holding was reaffirmed in *Sandoval.* Under § 28–1170, subsec. B(2)(a), as amended in 1961, bodily injury liability coverage in an Arizona policy must be in the minimum amount of $10,000. In *Geyer,* taking our cue from *Jenkins* and its progeny, we held that the minimum coverage required by our uninsured motorist statute, A.R.S. § 20–259.01 is "* * * a part of every policy issued containing such coverage, and that the prescribed limits cannot be reduced by offsetting policy provisions." 8 Ariz.App. at 467, 447 P.2d at 559. In *Geyer,* we cited the *Kincaid* case from Florida, and also the later case of Tuggle v. Government Employees Insurance Co., 207 So.2d 674 (Fla.1968), which approved the *Kincaid* holding.

In *Kincaid,* the intermediate appellate court held ineffective a provision which sought to relieve the insurer of the obligation to pay *under the uninsured motorist coverage* medical expenses paid or payable under the "Medical Payments Coverage" of the policy. In *Tuggle,* the Supreme Court of Florida held ineffective a similar, but different, clause,[1] which, like the clause in *Kincaid,* sought to reduce the amount *payable under the uninsured motorist coverage.* In so holding, the majority opinion in *Tuggle* called attention to a previous holding which "* * * excludes any intent that a claimant might pyramid coverages to obtain double recovery, or more than actual damages * * *," and to other authorities to the same effect as our *Geyer* decision, holding the uninsured motorist coverage "* * * enforceable to the full

---

1. The uninsured motorist coverage in *Tuggle* provided, as set forth at 207 So.2d 678:

"'(d) The company shall not be obligated to pay under this Coverage that part of the damages which the insured

may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under Part II.'"

statutory minimum to exactly the same extent that a policyholder would be legally entitled to recover damages from the third party tortfeasor." 207 So.2d at 675. But in so holding, the *Tuggle* court was careful to note that it regarded the precise terms of the policy provision and the precise coverage which it reduced as critical:

> "Nor does there appear to be any basis for treating the set-off provision as amounting only to a contractual *reduction of medical benefits,* contrary to the actual language of the policy stating in the provision for *uninsured motorist coverage* that the company shall not be obligated to pay any part of such liability which represents expense 'payable' by the insurer under its *medical benefits coverage. The clause on its face is one to decrease uninsured motorist coverage beneath the statutory minimum,* and one which means that under certain conditions (medical benefits in excess of $10,-000) there will be no uninsured motorist coverage whatever." (Emphasis added.)

207 So.2d at 675 (footnote omitted).

■ We do not think that any of these authorities, properly read and applied, indicate that the policy provision in the present case should be nullified. No Arizona statute requires the issuance of separate medical expenses insurance, in any amount. The coverage is voluntary, and customarily, as here, provides for the payment of benefits without regard to whose negligence caused the injuries. While offsets attempting to reduce mandatory coverages will not be permitted, there is nothing to prevent the insurer and a person desiring to have medical expenses insurance from employing any provisions with respect to the payment or nonpayment of these benefits which they choose.

The critical distinction between the provision here and that involved in the Florida cases is that the provision at issue does not purport to reduce a mandatory coverage. Instead, in its definition of "Expenses Actually Incurred," and by its provision that payments under the Medical Expenses coverage shall " * * * be deemed to have been advanced * * *" under the Bodily Injury Liability coverage, it provides the full mandatory bodily injury liability coverage, and reduces only the non-mandatory medical benefits coverage.

■ It may be argued that in so distinguishing *Kincaid* and *Tuggle,* in the present case, we have brought about a victory of semantics over substance. But the particular verbiage of the contract is often of crucial importance in insurance questions, as the rule that "ambiguities are to be resolved against the insurer and in favor of coverage" confirms. Further, our Supreme Court has stated that "In the absence of a statutory provision which will be read into each policy * * *," the cardinal principle of insurance contract interpretation is that the intention of the parties is controlling, and

> " * * * where the provisions of the contract are plain and unambiguous upon their face, they must be applied as written * * *."

D.M.A.F.B. Fed.Cr. U. v. Employers Mut. L. Ins. Co. of Wis., 96 Ariz. 399, 402–403, 396 P.2d 20, 22–23 (1964).

Apropos the foregoing, we think the following remarks in the "Editorial comment" to the Annot., 11 A.L.R.3d 1115, at 1117, are pertinent:

> " * * * the apparent right of the tortfeasor and his insurer to contract for such [medical payments] coverage as they see fit must not be overlooked. Since the law in most states requires no medical payments coverage at all, it is evident that the claimant's rights must be measured to a large extent by the particular language of the individual policy * * *."

In this state, where medical coverage such as this is voluntary, to judicially twist the clear meaning of contractual language to extend coverage would be to discourage the issuance of this type of insurance, which is obviously in the public interest.

We conclude that the provision in the policy issued by appellee crediting medical expense payments toward a recovery against the liability coverage is valid and effective.

Affirmed.

HATHAWAY and KRUCKER, JJ., concur.