**422**

Chief Justice of the Arizona Supreme Court pursuant to Arizona Const. art. VI, § 3.

646 P.2d 307

George J. SAHADI, Sr. and Eileen Sahadi, his wife; George J. Sahadi, Jr., by his Guardian, Plaintiffs/Appellants,

v.

MID–CENTURY INSURANCE COMPANY, a California corporation, Defendant/Appellee.

No. 1 CA–CIV 5287.

Court of Appeals of Arizona, Division 1, Department B.

April 8, 1982.

Rehearing Denied May 19, 1982.

Review Denied June 15, 1982.

Van Baalen Law Offices by Peter T. Van Baalen, Phoenix, for plaintiffs/appellants.

Johnson, Jessen, Dake & Oplinger by James E. Vieh, Phoenix, for defendant/appellee.

OPINION

BIRDSALL, Judge.

This case involves the question whether the appellee insurance company is liable to appellants for "excess medical expense insurance" provided for in its policy issued to them. The trial court granted appellee's motion for summary judgment. We affirm.

This case has had an aggravated procedural history which we find unnecessary to recount. The essential facts, which are without dispute, show that appellant George Sahadi, Jr. was injured in an automobile accident on November 11, 1973, while he was a passenger in an automobile driven by one Dominick Castro. As a result of the accident George Sahadi, Jr. incurred medical expenses in the amount of $3,257.70. Castro's liability for operating an automobile was insured by Central Mutual Insurance Company.

In addition to standard liability coverage, this policy included medical expense insurance coverage for an injured passenger, payable without regard to fault. At the time of the accident George Sahadi, Sr. was insured under two policies of automobile insurance (on two different automobiles) issued by the appellee, Mid-Century Insurance Company. These policies also included

medical expense coverage for the insured parties. George Sahadi, Jr. was an insured party under the terms of the policies since he was a member of the same, i.e., his father's household. The Mid-Century policies contained the following determinative provision concerning the "med-pay" coverage:

"... Under Coverages D and E, if there is other automobile medical expense insurance against a loss covered under Part III of this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all collectible automobile medical expense insurance; *provided, however, the insurance with respect to a substitute or non-owned automobile shall be excess insurance over any other collectible automobile medical expense insurance.*" (Emphasis added)

It is undisputed that the Castro automobile was a "non-owned automobile" within the meaning of this Mid-Century provision.

It is likewise undisputed that Castro's insurer, Central Mutual, paid to appellants the precise sum of George Sahadi, Jr's. medical expenses shortly after being named in the first amended complaint in the present litigation. Appellants had alleged in that pleading that Central Mutual was liable for appellants' "medical costs." Appellants subsequently stipulated to a dismissal with prejudice of their action against Central Mutual.

After the trial of appellants' negligence lawsuit against Castro, the trial court, on Castro's motion, deducted the amount previously paid for medical expenses from the $45,000 jury verdict, and entered an amended judgment for the difference. Appellants assert that this action was taken under authority of *Caballero v. Farmers Insurance Group*, 10 Ariz.App. 61, 455 P.2d 1011 (1969) and language of the Central Mutual policy that declared payments under the medical expense coverage to be advancements toward the company's obligation under the policy's liability coverage. This apparent misunderstanding of the court's authority for amending its judgment underlies appellant's principal contention on appeal.

In *Caballero* the plaintiff, who had previously been paid $706.20 under a medical expense endorsement to a policy owned by the tortfeasor, had obtained a judgment for $5,000 against the tortfeasor. The insurance carrier, which was contractually obligated to indemnify the tortfeasor for the amount of the judgment, paid the plaintiff an amount representing the difference between the medical expenses previously paid and the judgment amount. The plaintiff then brought *a garnishment action* against the carrier, contending that the carrier's obligation to its insured could not be reduced by amounts paid under the medical expenses coverage. The point of importance here is that the obligation being enforced in *Caballero* was the insurer's obligation to indemnify its insured, not the insured's obligation to the plaintiff. Neither the policy provision nor the court's recognition of its validity diminished the insured tortfeasor's liability for the remainder of the judgment.

In appellants' suit against Castro, however, the court was not concerned with Central Mutual's liability to Castro, but with Castro's liability to appellants. That liability, being wholly independent of contract, could not have been determined by the terms of the Central Mutual policy. The court therefore could not rely upon the "off-set" provision of that policy, or upon the holding in *Caballero*, to *reduce* appellants' judgment against Castro. Instead, we assume, the court relied upon an independent rule of law cryptically alluded to in *Caballero*—that a tortfeasor is entitled to credit for amounts paid to the plaintiff under medical expense insurance *procured by the tortfeasor*. E.g. *Aragon v. Brown*, 93 N.M. 646, 603 P.2d 1103 (App.1979); *Dodds v. Bucknum*, 214 Cal.App.2d 206, 29 Cal.Rptr. 393 (1963); *Moore v. Leggette*, 24 A.D.2d 891, 264 N.Y.S.2d 765 (1965); *see also* Dobbs, Remedies § 8.10, p.583 (1973); Restatement of Torts 2d, § 920A. The collateral source rule does not apply under

these circumstances because the tortfeasor's insurance company is not a collateral source. Cf. *Riexinger v. Ashton Co.*, 9 Ariz. App. 406, 453 P.2d 235 (1969) (joint tortfeasor not a collateral source). The trial court therefore reduced the judgment[1] against Castro because Castro was not liable for the previously paid medical expenses included in the verdict, not because Central Mutual had limited its indemnity obligation to Castro.

With this discussion as background, we turn to appellants' contentions. They make no claim that the "excess" provision of appellee's policy does not render it a secondary source of coverage; nor do they contend that the provision in question can be construed to require that the policy of "other insurance" be owned by the same insured. *See Aetna Casualty and Surety Co. v. Scott*, 107 Ariz. 609, 491 P.2d 463 (1971). They contend, instead, that they are entitled to the excess coverage provided by appellee's policy because there was no other "collectible" automobile medical expenses insurance.

Appellants contend that the action of the trial court in reducing the judgment against Castro converted what had previously appeared to be benefits under Central Mutual's "med-pay" coverage into an element of their tort recovery from Castro. They therefore contend that they have been recompensed for their medical expenses only as an element of tort damages and that a provision of the "med-pay" endorsement similar to the one considered in *Caballero* precludes payment for medical expenses that have been paid in discharge of the carrier's indemnity obligation to Castro. That provision would be binding upon appellants because their right to recover under the "med-pay" endorsement, unlike their right to recover from Castro, is derived only from the policy.

The result of accepting appellants' argument would be a double recovery of their medical expenses—a result generally disfa-vored by the law but not at all uncommon in cases concerning insurance. *See, e.g., Scott, supra.* We have discovered only one case dealing with the issue raised by these facts, *Silinsky v. State-Wide Ins. Co.*, 30 A.D.2d 1, 289 N.Y.S.2d 541 (1968). In that case the court did not consider the argument made by appellants here, since it did not appear that medical expenses had been paid either as an element of tort damages or as benefits under the tortfeasor's "med-pay" policy. The test adopted in *Silinsky* was a simple one: if medical expenses had in fact been paid by the tortfeasor's insurer, excess coverage under the plaintiff's policy would be denied. Despite appellants' imaginative argument, we believe the same result is dictated in this case by our previous discussion of the court's reason for reducing the judgment against Castro. The judgment was properly reduced, rather than partially satisfied, because appellants' medical expenses, having previously been paid by Castro's insurer, could not be recovered from Castro in the tort action. Even though the "med-pay" benefits compensated for an *injury* for which Castro was ultimately determined to be legally responsible, they constituted no part of the *damages* that could be recovered from him. It may well be that amounts advanced under the "med-pay" endorsement were required, under the terms of the policy, to be treated as advancements for the purpose of computing Central Mutual's indemnity obligation to Castro. The use of such an "off-set" provision to define the responsibilities of the parties to the policy with respect to each other, however, did not alter the established character of the benefits received by appellants. Appellants collected their medical expenses as beneficiaries of the "med-pay" endorsement, not as tort creditors of Castro, and are not entitled to the excess coverage provided by their own insurer.

Affirmed.

JACOBSON, P. J., and McFATE, J., concur.

1. Both this rule and the procedure followed by the trial court are expressly adopted in A.R.S. § 12–2302.

NOTE: The Honorable BEN C. BIRD-SALL, Arizona State Court of Appeals, Division II and The Honorable YALE McFATE, a retired judge of a court of record, have been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, §§ 3, 20.