805 P.2d 381

**Saundra SCHULTZ and Leroy Schultz, husband and wife, Plaintiffs/Appellees,**

v.

**FARMERS INSURANCE GROUP OF COMPANIES; Farmers Insurance Company of Arizona; Ed Bracamonte, Defendants/Appellants.**

No. CV–90–0221–SA/AP.

Supreme Court of Arizona,
En Banc.

Jan. 24, 1991.

Broening, Oberg & Woods by James R. Broening, Neal B. Thomas and Jan Cleator, Phoenix, for petitioners.

Stompoly & Stroud, P.C. by John G. Stompoly, Tucson, for real parties in interest.

## OPINION

MOELLER, Justice.

### JURISDICTION

The trial court held that a "non-duplication of medical benefits" endorsement in an automobile insurance policy was void. It initially declined to include Rule 54(b) finality language to make the ruling appealable. After failing to obtain special action relief in the court of appeals, the insurer sought such relief here. While the special action was pending, the trial court granted a renewed request to make its ruling appealable, and the insurer then appealed to the court of appeals. After oral argument on the special action, we accepted jurisdiction, transferred the appeal to this court, and consolidated the two proceedings. We now treat this case as an appeal into which the special action has been merged. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.21(A)(3).

### ISSUE PRESENTED

Whether a non-duplication of medical benefits endorsement is valid and enforceable so long as the insured receives full compensation for her loss.

### FACTS AND PROCEDURAL HISTORY

The material facts are not in dispute. The insured, Saundra Schultz, was involved in an automobile accident with an uninsured motorist. Schultz had an automobile liability policy with Mid–Century Auto Insurance Company, one of the Farmers Insurance Groups (Farmers). The policy provided uninsured motorist (UM) coverage in the required minimum amount of $15,000 and medical payments (med-pay) coverage of $5,000. The policy contained the following non-duplication endorsement:

Any amount paid under "medical payments coverage" will be applied against any other coverage applicable to the loss so that there is no duplication of "medi-

cal payments" benefits. In no event shall a coverage limit be reduced below any amount required by law.

Schultz incurred medical expenses of $3,771.19, which Farmers paid pursuant to the med-pay coverage. Farmers then notified Schultz that it would apply the non-duplication endorsement to offset this amount against the UM benefits otherwise payable.

Schultz then sued Farmers alleging breach of contract, insurance bad faith, and racketeering. She requested a declaratory judgment that the non-duplication endorsement violated public policy and was void. Both parties moved for summary judgment. The trial court granted summary judgment for Schultz and ruled that the non-duplication endorsement was void. Although the insured's breach of contract claim was moot because Farmers had tendered the full amount of UM coverage, the non-contractual claims, including the bad faith claim, remained to be litigated.

We accepted jurisdiction of the special action and transferred the appeal to this court to determine the validity of the non-duplication endorsement under these circumstances and to revisit earlier Arizona decisions touching on the subject.

## DISCUSSION

### A. The Problem

Schultz contends that Farmers must pay whatever amount she is entitled to receive on her claim against the uninsured motorist up to the $15,000 UM limit, *in addition* to the $3,771.19 medical expenses already paid. Farmers contends the non-duplication endorsement allows it to deduct the $3,771.19 med-pay already paid from any amount Schultz is entitled to receive under the UM coverage, provided Schultz receives full compensation. We agree with Farmers, and find the non-duplication endorsement valid as used in these circumstances.

### B. The Statutory Scheme and Applicable Principles

UM coverage is mandatory in Arizona. In this respect, Arizona's uninsured motorist statute provides greater protection than do most states' statutes. *Spain v. Valley Forge Ins. Co.*, 152 Ariz. 189, 192, 731 P.2d 84, 87 (1986). Our statute requires UM coverage to protect insureds "who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." A.R.S. § 20–259.01(A).

A.R.S. § 28–1170(B)(2)(a) provides that the minimum required UM coverage is $15,-000. A.R.S. § 20–259.01 requires insurers to notify insureds in writing that they may purchase additional UM coverage up to the limits of their liability coverage.

We must determine the validity of the challenged endorsement with this statutory scheme in mind. *See State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 260, 782 P.2d 727, 736 (1989) (all statutes relating to insurance contracts in effect become part of the contract). The cardinal rule of statutory interpretation is to determine and give effect to the legislative intent behind a statute. *Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985).

We note that, in a different context, the legislature has provided that an insurer may use offset provisions to prevent double recovery by an insured. A.R.S. § 20–259.01(F) states: "If multiple policies or coverages purchased by one insured on different vehicles apply to an accident or claim, the insurer may limit the coverage so that only one policy, selected by the insured, shall be applicable to any one accident."

We recognize that this "stacking" preclusion provision is not directly applicable in this case because we are not dealing with multiple coverage on different vehicles, but with multiple coverages in one policy on one vehicle. *See Duran v. Hartford Ins. Co.*, 160 Ariz. 223, 224, 772 P.2d 577, 578 (1989) (upholding provision forbidding the stacking of UIM and liability coverage in a single-tortfeasor, single-policy case); *Rashid v. State Farm Mutual Auto Ins. Co.*, 163 Ariz. 270, 272–73 n. 2, 787 P.2d 1066, 1068–69 n. 2 (1990). Although not directly applicable, A.R.S. § 20–259.01 demon-

strates that Arizona public policy permits an insurer to preclude double recovery on multiple coverages.

We have previously determined that A.R.S. § 20–259.01 is intended to require, when possible, *full* indemnification of insured victims who have accidents with uninsured or underinsured motorists. *See Spain*, 152 Ariz. at 194, 731 P.2d at 89; *Brown v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 323, 327, 788 P.2d 56, 59 (1989) (public policy mandates UIM be recoverable in addition to liability to the extent of actual damages).

## C. The Authorities

Schultz relies principally on our decisions in *Bacchus v. Farmers Insurance Group Exchange*, 106 Ariz. 280, 475 P.2d 264 (1970), and *Spain v. Valley Forge Insurance Company*, 152 Ariz. 189, 731 P.2d 84 (1986), in arguing that the legislature intended to require full recovery under both coverages even though, under the circumstances of this case, that would require double payment of the medical expenses.

In *Bacchus*, the insurer, pursuant to its policy, sought to deduct its med-pay payments from the UM payments with respect to two insureds. We prohibited the offset. In doing so, we did not distinguish between the two insureds, but applied the prohibition of offsets to both. It is not entirely clear from the opinion whether the ruling permitted double recovery on behalf of one of the insureds, but it may well have. Although *Bacchus* did not mention double recovery, later cases have done so:

> "... all that has been said herein is applicable only to the extent of the total legal damages of the claimant. *Nothing we have stated in this opinion is to be construed as permitting or tending to permit a "double recovery" or windfall to the insured under separate coverages in excess of her actual legal damages.*"

*Geyer v. Reserve Ins. Co.*, 8 Ariz.App. 464, 467, 447 P.2d 556, 559 (1968), *cited in Brown*, 163 Ariz. at 328, 788 P.2d at 61 (emphasis added).

In line with the limitation suggested by *Geyer*, *Spain* permitted a less-than-fully compensated insured to recover under both liability and UM coverage, yet we specifically excluded recovery that would duplicate benefits. *Spain*, 152 Ariz. at 194 n. 5, 731 P.2d at 89 n. 5. Although citing *Bacchus*, *Spain* recognized that payments under one coverage of the policy could be credited under the UM coverage to avoid duplication of benefits. *Id.* at 194, 731 P.2d at 89.

*Spain* involved a passenger killed in a two-vehicle accident. The host vehicle had liability, uninsured, and underinsured coverage. The other car was uninsured. The host insurance company paid $100,000 under the liability coverage, but refused to pay an additional $100,000 under the uninsured coverage because the policy had an offset provision purportedly limiting its obligation to $100,000 per accident. The court of appeals upheld recovery under both the liability and the UM coverage *if* damages exceeded the limit of one coverage, but limited the UM coverage to the statutory minimum of $15,000. *Spain v. Valley Forge Ins. Co.*, 152 Ariz. 185, 188, 731 P.2d 80, 83 (App.1985), *vacated*, 152 Ariz. 189, 731 P.2d 84 (1986). We vacated the court of appeals' opinion and held the offset provision unenforceable. Citing *Bacchus*, we stated:

> The amendment to A.R.S. § 20–259.01(B) in 1982 manifests a clear legislative intent that each insured who purchased UM coverage in the amount of liability coverage would have available the total of the two coverages in cases in which the injury was caused by two negligent drivers. *Any attempt, by contract or otherwise, to reduce any part of this amount violates the statute.* See, e.g., *Bacchus*, 106 Ariz. at 283, 475 P.2d at 267.

*Spain*, 152 Ariz. at 194, 731 P.2d at 89 (emphasis added) (footnote omitted).

Schultz now relies on the emphasized language in *Spain* to invalidate the non-duplication endorsement here. However, in a footnote to that same language in *Spain*, we stated: "[O]f course, if an insured has

been fully compensated under the liability coverage, then these payments may be credited under the UM coverage to avoid a duplication of benefits." *Id.* at 194 n. 5, 731 P.2d at 89 n. 5 (citations omitted). *Spain's* language is more restrictive than the earlier language in *Bacchus,* which is silent on the subject of benefit duplication.

We also must address *Caballero v. Farmers Insurance Group,* 10 Ariz.App. 61, 455 P.2d 1011 (1969). In *Caballero,* the insurer sought to enforce a policy provision treating med-pay payments as advancements to be applied against liability coverage. In upholding the offset, the court of appeals emphasized the "crucial importance" of the policy language, which did not purport to reduce mandatory coverage, but instead applied only to the non-mandatory med-pay coverage.

The court explained:

No Arizona statute requires the issuance of separate medical expenses insurance, in any amount. The coverage is voluntary, and customarily, as here, provides for the payment of benefits without regard to whose negligence caused the injuries. *While offsets attempting to reduce mandatory coverages will not be permitted, there is nothing to prevent the insurer and a person desiring to have medical expenses insurance from employing any provision with respect to the payment or nonpayment of these benefits which they choose.*

*Caballero,* 10 Ariz.App. at 64, 455 P.2d 1011 (emphasis added). *Caballero* did not discuss whether applying the offset provision would prevent the claimant's full recovery or whether invalidating the provision would permit double recovery. However, the facts in the opinion make it clear that the claimant in *Caballero* received full recovery notwithstanding allowance of the offset.

Having examined the somewhat inconsistent cases of *Bacchus, Spain,* and *Caballero,* we now consider other applicable principles of public policy to help us reach the appropriate result. Public policy mandates only that an insured be fully compensated, when possible, for damages incurred. We do not believe the legislature sought to preclude insurers from contractually eliminating double recovery. As stated by a noted authority:

The avoidance of duplication of insurance may be permitted ... allowing deduction of medical payments made from uninsured motorist available benefits. The set off [provided by the policy] would clearly apply where the insured is fully reimbursed for all his expenses and loss, but where there is no chance of a double recovery, the insured may be allowed to recover under all available coverages.

15A G. Couch, *Cyclopedia of Insurance Law* § 56:32, at 43 (2nd ed. 1983).

Recently, in *Brown v. State Farm,* this court invalidated an "other insurance" clause that would have limited coverage when other insurance was available. 163 Ariz. at 329, 788 P.2d 56. However, *Brown* held only that the insurer could not invoke the other insurance clause to limit recovery if, as a result, the insured would not be fully compensated. In so holding, we discussed the policy of mandatory UM coverage and specifically reaffirmed that an insurer may apply offset clauses to avoid duplicate recovery:

The majority of courts reasons that insurers violate the public policy embodied in the UM/UIM statutes by inserting clauses that permit them to reduce or eliminate coverage *when the victim/insured has not been fully compensated. See* Widiss § 13.6, at 397–402; Appelman § 5102.25, at 472; *see also Arizona Property & Cas. Ins. Guar. Fund v. Herder,* 156 Ariz. 203, 205, 751 P.2d 519, 521 (1988). A majority of states that has considered the issue also will not enforce the prorata other insurance provision when an insured seeks full indemnification for injuries. Widiss § 13.12, at 420.

*Brown,* 163 Ariz. at 328, 788 P.2d 56 (emphasis added) (footnote omitted).

Schultz also correctly points out that had she been in an accident with an insured motorist, she would be permitted double recovery of her medical expenses. In such a case, she could recover full damages

from the insurance carrier for the other driver *in addition* to medical payments from her own carrier. However, as we recently observed in *Rashid:*

> Our inquiry in this case should not be circumscribed by the attempt to eliminate disparate treatment resulting from the fortuitous circumstances that vary from case to case. Our inquiry, rather, is directed to the question of what statutes require to be included in all policies and whether those statutes provide insurance carriers with latitude to insert exclusions, offsets, or escape provisions.

*Rashid,* 163 Ariz. at 273 n. 3, 787 P.2d at 1070 n. 3.

The majority of Arizona cases that have considered UM excess/escape clauses have found them unenforceable. This is because "it would be unconscionable to permit insurers to collect a premium for a coverage they are required by statute to provide, and then to avoid payment of a loss because of limitations they have themselves devised." *Id.* at 275, 787 P.2d at 1071 (citation omitted). We emphasize, however, that the cases refusing to apply a clear policy provision deal with an insured who has *not* been fully indemnified.[1]

Most courts, however, recognize that a clause such as the one challenged here may properly be applied to prevent duplication of benefits. 1 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 13.6 (2nd ed. 1985); 12A G. Couch, *Cyclopedia of Insurance Law* § 45:628, at 77–78; 8C J. Appleman, *Insurance Law & Practice* § 5102.25 (1981). Professor Appleman states:

> The general rule, ... is that [personal injury protection] and uninsured motorist benefits can be coordinated, so that a duplicate payment does not result; rather, credit may be given under the one benefit for payments made under the other.
>
> .    .    .    .    .
>
> A policy provision permitting such reduction is not invalid.

8D Appleman, *Insurance Law & Practice* § 5189 at 587–88.

## D. Conclusion

Based upon our review of the foregoing authorities, we conclude that Arizona statutes do not invalidate a contractual non-duplication endorsement so long as applying the endorsement will not deprive the insured of full recovery for her loss. We believe this is the clear import of the Arizona statutory scheme, several of our more recent Arizona cases, persuasive authorities in the insurance field, and many cases from other jurisdictions.

We painted with too broad a brush in *Bacchus* when we said that non-duplication endorsements were, in all instances, unenforceable. We overrule *Bacchus* to the extent it purports to hold a non-duplication endorsement unenforceable even when the result is double recovery. We also believe that the enforceability of a non-duplication endorsement should not depend upon the semantic differences suggested in *Caballero.* Enforceability of a non-duplication endorsement should not depend upon whether the endorsement is stated as a reduction of a required coverage or as a reduction of an

---

1. See the following cases invalidating exclusions: *State Farm Mut. Auto. Ins. Co. v. Duran,* 163 Ariz. 1, 785 P.2d 570 (1989) ("furnished for regular use" exclusion applied to UIM, yet, A.R.S. § 20–259.01 also states that "[u]ninsured and underinsured motorist coverages are separate and distinct and apply to different accident situations.") *Higgins v. Firemen's Fund Ins. Co.,* 160 Ariz. 20, 770 P.2d 324 (1989) ("other vehicle" exclusion denying UIM coverage); *Employers Mut. Cas. Co. v. McKeon,* 159 Ariz. 111, 765 P.2d 513 (1988) (named driver exclusion as applied to UM coverage); *Calvert v. Farmers Ins. Co.,* 144 Ariz. 291, 697 P.2d 684 (1985) ("other vehicle" exclusion denying UM coverage). See the following cases denying offsets: *Spain v.*

*Valley Forge Ins. Co.,* 152 Ariz. 189, 731 P.2d 84 (1986); *Arizona Prop. & Cas. Ins. Guar. Fund v. Herder,* 156 Ariz. 203, 751 P.2d 519 (1988). See the following cases voiding excess/escape clauses: *Brown v. State Farm Mut. Auto. Ins. Co.,* 163 Ariz. 323, 788 P.2d 56 (1989) (excess/escape and pro rata limit as applied to UIM); *State Farm Mut. Auto. Ins. Co. v. Fireman's Fund Ins. Co.,* 149 Ariz. 179, 717 P.2d 858 (1986) (escape clause violated statute requiring that garage keepers policy be excess over all other insurance available to driver); *State Farm Mut. Auto. Ins. Co. v. Bogart,* 149 Ariz. 145, 717 P.2d 449 (1986) (escape clause in liability policy repugnant to excess clause so both provided primary coverage).

optional coverage. The test, instead, is whether applying the endorsement denies full recovery for the insured's loss. To the extent applying such an endorsement deprives an insured of full recovery, it is unenforceable. However, a non-duplication endorsement is enforceable if it does not interfere with the insured's right to full recovery for her loss.

## DISPOSITION

Enforcement of the non-duplication endorsement in this case does not deprive the claimant of full recovery and is, therefore, enforceable. The trial court's judgment declaring the clause unenforceable is reversed. This case is remanded to the trial court for further proceedings consistent with this opinion.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and CORCORAN, JJ., concur.