966 P.2d 1000

Martha BUSTOS and George Bustos,
Plaintiffs–Appellees,

v.

W.M. GRACE DEVELOPMENT,
a Missouri corporation,
Defendant–Appellant.

No. 1 CA–CV 97–0042.

Court of Appeals of Arizona,
Division 1, Department C.

Nov. 20, 1997.

Review Denied Nov. 17, 1998.

Frederick C. Berry, Jr., P.C. by Frederick C. Berry, Jr., Phoenix, for Plaintiffs–Appellees.

Shorall & Stevens, P.C. by Thomas J. Shorall, Jr., and Kevin C. Nicholas, Phoenix, for Defendant–Appellant.

## OPINION

NOYES, Judge.

Appellant W.M. Grace Corporation ("Grace") appeals from denial of its motion for relief from judgment pursuant to Rule 60(c)(5) and (6), Arizona Rules of Civil Procedure. Grace asserts that, under Arizona Revised Statutes Annotated ("A.R.S.") section 12–2302 (1994), the judgment against it has been satisfied by medical payments to appellee in advance of the judgment. We agree.

### Facts and Procedural History

Martha Bustos ("Bustos") sued Grace for damages after she slipped and fell in a facility owned and managed by Grace. After the case was transferred to arbitration, Grace filed a $5,000 offer of judgment, which Bustos declined. Prior to the arbitration hearing, Grace's insurance carrier paid Bustos $5,000 under the no-fault medical payment provision of Grace's policy. The arbitrator later found in favor of Bustos in the amount of $3,244. Before the award was reduced to judgment, Grace filed an objection and sought reimbursement for expert witness fees under Arizona Rule of Civil Procedure 68(d) because the award was less than the offer of judgment. In its objection, Grace also pointed out "that there is an issue regarding whether [Grace] is entitled to credit for the insurance 'medical payments' benefits already paid to Plaintiff (and reimbursement for the excess)." The trial court denied Grace's motion and entered judgment for Bustos.

After the parties agreed that Grace would not appeal and that Bustos would waive costs, Grace refused to pay the judgment. Bustos then had a writ of garnishment issued, and Grace had the writ quashed. Grace then filed a motion pursuant to Arizona Rules of Civil Procedure 60(c)(5) and (6) for relief from the judgment. Grace argued that under A.R.S. section 12–2302, it was entitled to a credit for the $5,000 advance payment to Bustos, thus leaving the $3,244 judgment satisfied.

The court denied Grace's Rule 60(c) motion, concluding that section 12–2302 did not apply because "the medical payments coverage that was paid ... is not the type of payment envisioned by the statute." Grace appeals. We have jurisdiction pursuant to A.R.S. section 12–2101(C) (1994).

### Analysis

The question is whether A.R.S. section 12–2302 applies to payments made by a defendant's insurer to plaintiff pursuant to a no-fault medical payment provision of defendant's policy. We hold that it does. Statutory interpretation is an issue of law and is reviewed *de novo*. *Chaffin v. Comm'r of the Arizona Dep't of Real Estate*, 164 Ariz. 474, 476, 793 P.2d 1141, 1143 (App.1990).

Section 12–2302(B) provides as follows:

If judgment is entered against a defendant by whom or on whose behalf an advance payment has been made and in favor of a plaintiff to whom or for whose benefit an advance payment has been made, such defendant shall be entitled to a reduction of the amount of damages awarded to such plaintiff equal to the amount or value of such advance payments as may be found by the court to have been made. However, in no event shall a person who has made such advance payments be entitled to reimbursement for amount paid in excess of the damages awarded to such plaintiff or in the event such plaintiff fails to recover judgment in his favor.

Section 12–2301(1) (1994) defines "advance payment" as

any money or other thing of value voluntarily paid or provided before trial, as compensation or reimbursement for damages, to or for the benefit of any person having or asserting a claim for damages for personal injuries ... against the person by whom or on whose behalf such payment is made.

■ "The primary rule of statutory construction is to find and give effect to legislative intent." *Mail Boxes Etc., U.S.A. v. Industrial Comm'n of Ariz.*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). We look first to the language of the statute on the presumption that the legislature says what it means. *Id.*; *Canon Sch. Dist. v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). Words are given their ordinary meaning unless the context of the statute requires otherwise. *Mail Boxes*, 181 Ariz. at 121, 888 P.2d at 779. If statutory language is clear and unambiguous, it is normally conclusive unless clear legislative intent to the contrary exists or impossible or absurd consequences would result. *Id., State ex rel. Fox v. New Phoenix Auto Auction, Ltd.*, 185 Ariz. 302, 304, 916 P.2d 492, 494 (App.1996). The effect and consequences of alternative statutory constructions may also be considered. *Canon*, 177 Ariz. at 530, 869 P.2d at 504.

■ Grace argues that the plain language of the statute entitles it to credit the $5,000 advance payment against the judgment. Bustos argues that Grace is not entitled to such a credit because Grace's insurance policy has no provision for offsetting no-fault medical payments against liability payments. Bustos relies on several cases, but those cases are distinguishable because they involve policy-coverage disputes between insured and insurer. *See Schultz v. Farmers Ins. Group*, 167 Ariz. 148, 805 P.2d 381 (1991) (dispute between insured and insurer over nonduplication of medical benefits endorsement in an insurance contract); *Aetna Cas. & Sur. Co. v. Scott*, 107 Ariz. 609, 491 P.2d 463 (1971) (dispute between insured and insurer over policy provision stating that insurer's coverage would be deemed excess coverage if insured recovered benefits from other insurance); *Sahadi v. Mid–Century Ins. Co.*, 132 Ariz. 422, 646 P.2d 307 (App.1982) (dispute between insured and insurer over policy provision deeming insurance regarding a non-owned automobile to be excess insurance over other collectible automobile medical expense insurance); *Caballero v. Farmers Ins. Group*, 10 Ariz.App. 61, 455 P.2d 1011 (1969) (garnishment proceeding regarding insurer's obligation to indemnify insured).

Unlike the cases relied on by Bustos, the case presented here does not involve obligations of an insurer to an insured; rather, it involves the obligation, if any, of Grace to Bustos. The contract that defines the obligations of Grace's insurer to Grace neither defines nor creates any obligations of Grace to Bustos.

Bustos also contends that the $5,000 advance payment was not made voluntarily because Bustos was entitled to the payment as a beneficiary of the no-fault medical payment provision in Grace's policy. We agree that Bustos was a beneficiary, but we conclude that the payment was voluntary because it was made on behalf of Grace, and Grace at that point had no obligation to make payment. Bustos was "entitled" to the payment only because Grace had paid for an insurance policy that provided some no-fault coverage. But the statute does not distinguish between liability payments and no-fault medical payments. Section 12–2301 defines "advance payment" as "*any* money or other thing of value voluntarily paid or provided before trial, as compensation...." (Emphasis added.)

By the plain language of the statute, then, Grace is entitled to credit the liability judgment with the advance payment made to Bustos pursuant to the no-fault medical payment provision of Grace's insurance policy. Our holding furthers the purpose of the statute to encourage potential defendants to advance payments to assist plaintiffs in meeting their immediate needs, without having to either admit liability or pay twice for the same injury. *Minutes of Committee on Judiciary, Suffrage and Elections*, 29th Legis., 1st Sess. 304 (Ariz.1969). No-fault medical expense insurance is one way a tort victim can receive advance payment before judgment is entered and without regard to liability. Construing the statute as Bustos suggests would discourage defendants from obtaining no-fault coverage because it would expose those defendants to double recovery by plaintiffs; first on the no-fault coverage, and then again on the liability coverage.

■ We agree with the Restatement (Second) of Torts, which provides that "[a] payment made by a tortfeasor or by a person acting for him to a person whom he has

injured is credited against his tort liability...." Restatement (Second) of Torts § 920A (1979). The Restatement also provides that liability is reduced where payments are "made under an insurance policy maintained by the defendant, whether made under a liability provision or without regard to liability, as under a medical-payments clause." Restatement (Second) of Torts § 920A cmt. a (1979).

For a final argument, Bustos invokes the collateral source rule, which provides that compensation from a source independent of the tortfeasor is not credited to the tortfeasor and does not reduce the damages that can be recovered from the tortfeasor. *Burrington v. Gila County*, 159 Ariz. 320, 325–26, 767 P.2d 43, 48–49 (App.1988). This rule is inapplicable in this case, however, because the payment here was made by Grace's insurer. A tortfeasor's insurer is not a collateral source. *Sahadi v. Mid–Century Ins. Co.*, 132 Ariz. at 424, 646 P.2d at 309.

Reversed and remanded with directions to grant Grace's motion for relief from judgment.

LANKFORD, P.J., and GARBARINO, J., concur.