18 P.3d 1239

The STATE of Arizona, ex rel. Arizona
Department of Health Services,
Petitioner,

v.

Hon. Wallace R. HOGGATT, Judge of the
Superior Court of the State of Arizona,
in and for the County of Cochise, Re-
spondent,

and

John Edwin Woods; George Flick; and
Larry Dever, Sheriff of Cochise Coun-
ty, Real Parties in Interest.

No. 2 CA–SA–00–0139.

Court of Appeals of Arizona,
Division 2, Department B.

Feb. 13, 2001.

Janet Napolitano, Arizona Attorney General, by Dante M. Alegre and Kevin D. Ray, Phoenix, Attorneys for Petitioner.

Mark A. Suagee, Cochise County Public Defender, by Donna M. Bechman, Bisbee, Attorneys for Real Parties in Interest John Edwin Woods and George Flick.

Chris M. Roll, Cochise County Attorney, by Vincent J. Festa, Bisbee, Attorneys for Real Party in Interest Larry Dever.

HOWARD, Presiding Judge.

¶1 Petitioner Arizona Department of Health Services (DHS) seeks special action relief from the respondent judge's orders, entered pursuant to A.R.S. § 36–3717, re-

quiring DHS to transport real parties in interest John Edwin Woods and George Flick from the Arizona Community Protection and Treatment Center (ACPTC) at the Arizona State Hospital in Phoenix to Cochise County Superior Court to attend a *Frye*[1] hearing. Woods and Flick are the subjects of petitions filed by the Cochise County Attorney's Office pursuant to A.R.S. § 36–3704, alleging that they are sexually violent persons (SVP). If a court or jury so finds beyond a reasonable doubt, A.R.S. § 36–3707(A), they must be committed to the custody of DHS and placed in a "licensed facility," or conditionally released to a "less restrictive alternative." § 36–3707(B); *see also* A.R.S. §§ 36–3710 and 36–3711.

¶2 DHS asserts and we agree that it has no equally plain, speedy, or adequate means by appeal of obtaining review of the respondent judge's interlocutory orders. Ariz. R.P. Special Actions 1(a), 17B A.R.S. And, the issue raised in this special action is of statewide importance. *See Jones v. Buchanan*, 177 Ariz. 410, 411, 868 P.2d 993, 994 (App. 1993). But, for the reasons stated below, we cannot say the respondent judge abused his discretion in entering the order and therefore deny relief. Ariz. R.P. Special Actions 3.

¶3 In September 2000, the respondent judge ordered DHS to transport Woods to Bisbee for the commitment trial, which had been set for November. DHS filed a motion for reconsideration, arguing that real party in interest Larry Dever, Cochise County Sheriff, should transport Woods. Gene Messer, the director of ACPTC, who had participated in drafting and had attended meetings and hearings concerning the proposal and passage of § 36–3717, testified at the subsequent hearing on the motion. The respondent denied DHS's motion for reconsideration, confirming its prior order requiring DHS to transport Woods to trial. DHS asked the respondent to permit the trial to be conducted at the Arizona State Hospital or telephonically or by an interactive audiovisual conferencing system, pursuant to § 36–

1. *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923). The purpose of the hearing presumably was to determine the admissibility in the commitment proceedings of expert testimony relating to the risk assessment of Woods's and Flick's future behavior.

3717(C). After another hearing, the respondent denied that request. Respondent then continued the trial date but set a three-day *Frye* hearing, commencing on January 3, 2001, consolidating Woods's case with Flick's for purposes of that hearing. Consistent with his previous order, the respondent ordered DHS to transport Woods and Flick to Bisbee for the *Frye* hearing. DHS filed motions to vacate the orders to transport for the *Frye* hearing, which the respondent denied. Subsequently, respondent ordered DHS to transport Woods and Flick to Bisbee for a hearing on February 6, 2001, and a continuation of the *Frye* hearing on March 13, 2001. DHS requested a stay of the transportation orders, which respondent denied.

■ ¶ 4 In its petition challenging the transportation order, DHS contends (1) Woods's and Flick's attendance at the *Frye* hearing is not authorized by § 36–3717(A), which sets forth the kinds of legal proceedings to which persons detained or committed as SVPs may be transported; (2) the statute does not require DHS to transport such persons for non-medical purposes; (3) county sheriffs should transport such persons for legal proceedings specified in § 36–3717(A); and, (4) DHS does not have the vehicles, personnel, or other resources to safely transport detainees to and from such proceedings. Even though we must ultimately decide whether the respondent abused his discretion by ordering DHS to transport Woods and Flick to the *Frye* hearing, we review de novo issues that involve the interpretation of the SVP statutes. *See Open Primary Elections Now v. Bayless*, 193 Ariz. 43, ¶ 9, 969 P.2d 649, ¶ 9 (1998); *Libra Group, Inc. v. State*, 167 Ariz. 176, 179, 805 P.2d 409, 412 (App. 1991).

■ ¶ 5 DHS first contends that because a *Frye* hearing is not specified in § 36–3717(A), a detained or committed person may not be transported to it. The statute provides:

A. Except as provided in subsection B of this section, a person who is detained or civilly committed pursuant to this article shall not be transported from a licensed facility under the supervision of the superintendent of the [A]rizona state hos-

pital, except that a person may be transported to court for any of the following reasons:

1. A probable cause hearing pursuant to § 36–3705.

2. A trial pursuant to § 36–3706.

3. A hearing on a petition for conditional release to a less restrictive alternative pursuant to § 36–3709.

4. A hearing on a petition for discharge pursuant to § 36–3714.

5. Any evidentiary hearing in which the presence of a person who is detained or civilly committed pursuant to this article is necessary.

6. Any court proceeding not otherwise specified in this article where the presence of the detainee or committed person is required.

¶ 6 That a *Frye* hearing is not specified in § 36–3737(A) does not mean a detained or committed person is not entitled to attend it. The outcome of that hearing may well determine the outcome of the trial at which the subject's liberty is at stake. The rules of procedure do not establish a *Frye* hearing as a separate procedure from the trial, although it is generally held prior to the remainder of the trial for practical reasons. *See, e.g., State v. Bible*, 175 Ariz. 549, 581, 858 P.2d 1152, 1184 (1993); *see also* Ariz. R. Evid. 104(c), 17A A.R.S. (contemplating hearing regarding admissibility of evidence to be held outside presence of jury). For purposes of § 36–3717(A), a *Frye* hearing is part of the trial held pursuant to § 36–3706. Thus, the respondent judge did not abuse his discretion by ordering that Woods and Flick be transported to Bisbee for the *Frye* hearing.

■ ¶ 7 We now turn to the question whether the respondent judge abused his discretion by ordering DHS to provide that transportation. To answer this question, we look again to § 36–3717. In addition to specifying in subsection (A) the kinds of legal proceedings to which a detained or committed person may be transported, § 36–3717 further provides:

B. Subsection A of this section does not apply to any person whom the court has

determined is subject to conditional release pursuant to § 36–3710 or to any necessary medical transports.

. . . .

D. The department of health services is responsible for the transportation to and from a medical facility of a person who is detained or committed pursuant to this article. The department of health services shall determine the appropriate mode of transportation and level of security and restraint for the transportation needs of the person. In determining the appropriate mode of transportation and level of security and restraint, the department shall consider the safety of the public, the transporting personnel and the detained or committed person.

E. The department of health services and any county sheriff are immune from liability for any good faith acts under this section.

■■■■ ¶ 8 Basic principles of statutory interpretation require that we first "seek to discern the intent of the legislature." *State v. Reynolds*, 170 Ariz. 233, 234, 823 P.2d 681, 682 (1992). To do so, we are mindful that "[t]he language of a statute is the most reliable evidence of its intent." *Walker v. City of Scottsdale*, 163 Ariz. 206, 209, 786 P.2d 1057, 1060 (App.1989). If the language of a statute is plain and unambiguous, we will give the words their ordinary meaning and will not resort to other forms of statutory interpretation. *See State ex rel. Udall v. Superior Court*, 183 Ariz. 462, 464, 904 P.2d 1286, 1288 (App.1995); *see also* A.R.S. § 1–213. We will give an undefined word or phrase "its ordinary meaning unless it appears from the context or otherwise that a different meaning is intended." *Sierra Tucson, Inc. v. Pima County*, 178 Ariz. 215, 219, 871 P.2d 762, 766 (App.1994). "Legislative intent ... can [also] be discovered by examining the development of a particular statute." *Carrow Co. v. Lusby*, 167 Ariz. 18, 20, 804 P.2d 747, 749 (1990); *see also State v. Takacs*, 169 Ariz. 392, 395, 819 P.2d 978, 981

(App.1991). We also consider the context of the statute, its language, its effects and consequences, and its spirit and purpose. *Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994).

¶ 9 With these principles in mind, we conclude and DHS concedes that § 36–3717(D) requires DHS to transport SVPs for medical purposes. Woods and Flick contend, however, that the clear language of § 36–3717, without resort to principles of statutory construction, requires DHS to provide transportation to court proceedings set forth in subsection (A) as well. They reach that conclusion based on their reasoning that § 36–3717(D) requires DHS to provide those detained or committed with "transportation to and from a medical facility" and that a "medical facility" includes a "licensed facility" such as ACPTC. Thus, they reason, even if the transportation is from a licensed facility to any court proceeding, DHS must provide it. The trial court accepted this reasoning.

■■■■ ¶ 10 The statutes do not define either "licensed facility" or "medical facility." Each word or term in a statute, however, is to be given meaning. *Frye v. South Phoenix Volunteer Fire Co.*, 71 Ariz. 163, 168, 224 P.2d 651, 654 (1950). From the fact that the legislature used these two terms, we assume it did not intend for them to be synonymous. *Torrez v. State Farm Mut. Auto. Ins. Co.*, 130 Ariz. 223, 226, 635 P.2d 511, 514 (App. 1981) (finding that terms "customarily," "regularly," and "frequently" in statute cannot have same meaning and that they describe different standards).

¶ 11 Although Woods and Flick insist that Messer's testimony supports their contention that ACPTC is a medical facility, the record before us shows that his testimony is to the contrary. The respondent judge asked Messer whether ACPTC is "considered a medical facility." Messer responded that ACPTC "is licensed by the Department of Health Services Division of Behavior Health Services as a Level 1 residential treatment center."[2] He

---

2. " 'Level I behavioral health facility' means a behavioral health service agency that provides a structured treatment setting with daily 24 hour supervision and an intensive treatment pro-

gram." Ariz. Admin. Code R9–20–101(A)(48). A Level I behavioral health facility can engage in "[r]estrictive behavior management," which is defined as "the use of medication, mechanical

stated that it is not a "medical facility" as contemplated by § 36–3717(D). Messer further explained:

> The medical facility nomenclature was developed really to identify those facilities adjacent to the Arizona Community and Protection Center[,][w]here we were required to transport the residents for medical services. Whether it be somebody complaining of chest pain, or somebody needing to see a specialty physician that's not available at the treatment center.
>
> . . . .
>
> A Level 1 residential treatment center by statute has the ability, with that level of license, to be able to use, under medical supervision or doctor's orders, a seclusion and restraint.
>
> That's primarily what differentiates it from a Level 2 residential treatment center.
>
> . . . .
>
> And if I might add, within our license as a Level 1 residential treatment center, we have a subcategory of licensees, and it's referred to on the license as restrictive behavior management.

Thus, general medical treatment for residents of a Level 1 treatment center, as opposed to behavioral treatment and supervision, is generally obtained from other medical facilities as needed.

¶ 12 Section 36–3707(B)(1) is consistent with Messer's distinction between a licensed facility and a medical facility. It provides that if the court or a jury determines that a person is a SVP, the court may "[c]ommit the person to the custody of the department of health services for placement in a licensed facility under the supervision of the superintendent of the Arizona state hospital and the person shall receive care, supervision or treatment. . . ." Thus, the term "licensed facility" for purposes of this article is different from a "medical facility"; it is a place in which a person may be detained for the protection of the person and the public, and treated for behavioral disorders.

¶ 13 Were we to construe "licensed facility," to be synonymous with a "medical facility" for purposes of this statute, it would render certain portions of the statute superfluous and meaningless. We are constrained to avoid such a construction. *Devenir Associates v. City of Phoenix*, 169 Ariz. 500, 504, 821 P.2d 161, 164 (1991) (finding that every part of a statute is to be given meaning so that no part is rendered "superfluous, void, contradictory, or insignificant"). All detained or committed persons are necessarily housed in a "licensed facility," unless the person is eligible for a less restrictive alternative under § 36–3707(B)(2). *See* § 36–3705 ("If the judge determines that probable cause exists to believe that the person named in the petition is a sexually violent person, the judge shall order the person be detained in a licensed facility under the supervision of the superintendent of the Arizona state hospital."); § 36–3707(B)(1) (person found to be a SVP shall be committed "to the custody of the department of health services for placement in a licensed facility under the supervision of the superintendent of the Arizona state hospital"). Under Woods's and Flick's reasoning, all transporting of detained or committed persons from ACPTC, whether for medical purposes or the specified legal proceedings, would be DHS's responsibility. The language in subsection (D) limiting DHS's responsibility to transportation "to and from a medical facility" would be superfluous. There would simply be no need for the legislature to expressly ascribe to DHS the responsibility of providing transportation to medical facilities if it were required to provide all permissible transportation. Furthermore, subsection (E) would then be meaningless. It provides that "[t]he department of health services and any county sheriff are immune from liability for any good faith acts under this section." § 36–3717(E). The subsection clearly reflects that the legislature contemplated county sheriffs would provide some transportation.

¶ 14 Woods and Flick additionally contend that the legislature's deletion of cer-

---

restraints, or seclusion for a client suffering a behavioral health emergency when less restrictive measures to assist the client in regaining

control have failed." Ariz. Admin. Code R9–20–101(A)(83).

tain language from a draft of the statute initially submitted to the legislature, which essentially required county sheriffs to transport persons detained or committed for the purposes set forth in subsection (A), reflects the legislature's intent that sheriffs not be required to provide that transportation at all and that DHS be responsible for all transportation. We disagree.

¶ 15 Senate Bill 1112 (SB 1112) originally provided in § 36–3717(E) that "[i]f a person who is detained or committed pursuant to this article is transported from the state hospital to a county court or jail facility, the county sheriff of the county in which the petition is filed is responsible for the transportation." Messer testified that during the legislative session, the Arizona Sheriffs Association and the Association of Counties and Communities felt an appropriation clause had to be submitted as part of SB 1112 so that counties could fulfill this transportation mandate. Messer explained that because legislators who supported SB 1112 did not have sufficient information to determine the amount that would be needed for any such appropriation, they decided to delete the provision "with the understanding that during the next 12 months, until the next legislative session, the various counties and sheriffs would keep track of their costs of transportation of sexually violent persons," and propose an amount for future appropriations. Thus, according to Messer, who stated he had attended the meetings during which SB 1112 was discussed, the legislators contemplated that the sheriffs could continue to provide transportation. Indeed, he pointed to the immunity clause in the adopted version of subsection (E) as reflective of that expectation.

¶ 16 Although the legislature deleted the provision requiring the sheriffs to transport to court, it did not delete the reference to sheriffs from the immunity provisions in subsection (E). Therefore, it must have contemplated that sheriffs would provide transportation on some basis. Thus, we do not find that the legislative history precludes sheriffs from being ordered to transport.

¶ 17 We conclude that the statute makes no specific provision as to whether county sheriffs or DHS are to provide transportation to the legal proceedings specified in subsection (A). Conceding that the statute does not require the county sheriffs to transport persons detained or committed for the legal proceedings set forth under § 36–3717(A), DHS contends it is nevertheless appropriate for them to do so, adding that the Arizona Constitution does not prohibit county sheriffs from providing that transportation. Sheriff Dever contends, however, that SVP proceedings are civil in nature, and their goal is to protect society and provide treatment and rehabilitation of SVPs. He claims that a trial court may not, therefore, order that a person detained after a finding of probable cause be held in a county jail. Rather, he contends, "[t]he legislature has directed that the superintendent of the Arizona state hospital is the person charged with the responsibility of maintaining persons who are determined to be sexually violent." He argues a jail is not a licensed facility. Thus, he argues, the statute reflects the legislature's intent that Woods and Flick remain the responsibility of DHS, including for transportation purposes.

¶ 18 Although the sheriff is correct insofar as he characterizes SVP proceedings as civil in nature, *see Martin v. Reinstein*, 195 Ariz. 293, ¶ 36, 987 P.2d 779, ¶ 36 (App.1999), this does not mean the sheriff may not transport a person detained or committed under the statutes. Indeed, as DHS points out and as a June 2000 minute entry in another matter before the respondent reflects, persons with mental disorders who are committed under A.R.S. § 36–540 can be transported by county sheriffs. *See also* A.R.S. § 36–524(E) (allowing peace officer to take person into custody and transport person to evaluation agency if evaluation agency personnel find reasonable cause to believe emergency examination is necessary); A.R.S. § 13–3994(L) (persons on conditional release but committed to jurisdiction of psychiatric review board after being found guilty but insane may be returned to secure state mental health facility for evaluation or treatment; law enforcement officer to provide transportation). Moreover, we question whether the sheriff has the standing to assert what appears to be a constitutional challenge to the respondent's

November 24, 2000 orders, which authorized Woods and Flick to be housed in the Cochise County adult detention center. That is a claim for Woods and Flick to make. *State v. Herrera*, 121 Ariz. 12, 15, 588 P.2d 305, 308 (1978) (for standing to assert a constitutional challenge, individual must have suffered a threatened or actual injury).

¶ 19 Absent legislative directive, the respondent judge was not constrained to choose either DHS or the sheriff to provide transportation here. It was just as appropriate for the respondent to order DHS to transport Woods and Flick and it would have been for the respondent to assign that responsibility to the Cochise County Sheriff. Indeed, the legislature has vested DHS with the "care, *supervision* or treatment" of committed persons, providing additional authority for the respondent's selection of DHS. A.R.S. § 36–3712(B) (emphasis added).

¶ 20 Finally, DHS contends that it does not have the vehicles, personnel, or other resources to safely transport detainees to and from court proceedings. The security required for transportation to court is not substantially different from the security necessary for medical treatment, which DHS is clearly required to provide. Further, DHS made its argument to the respondent. In rejecting that argument, the respondent stated, "[t]his Court does not deny that fact. However, it would also be a great burden upon the Sheriff of Cochise County to do so," noting that it is for the legislature to address the issue of appropriations. And, in rejecting DHS's claim that the Maricopa County Superior Court had been ordering the Maricopa County Sheriff to provide such transportation in that county, the respondent commented,

> [t]he fact . . . is interesting but not controlling. As a practical matter, it is a round trip of only a few miles from the main courthouse complex in Maricopa County to ACPTC and back. Cochise County is at the extreme southeast corner of the state and has a relatively small sheriff's office. Its resources are overtaxed.

Based on the record before us, we cannot say that the respondent abused its discretion in rejecting this argument.

¶ 21 Although we accept jurisdiction of this special action, we deny relief.

CONCURRING: PHILIP G. ESPINOSA, Chief Judge, WILLIAM E. DRUKE, Judge.

