100 P.3d 929

## In re WILPUTTE S.

### No. 1 CA–MH 04–0007 SP.

Court of Appeals of Arizona,
Division 1, Department C.

Nov. 23, 2004.

---

Richard M. Romley, Maricopa County Attorney by E. Catherine Leisch, Deputy County Attorney, Phoenix, Attorneys for Appellant.

Daniel R. Raynak, P.C. by Daniel R. Raynak, Phoenix, Attorney for Appellee.

## OPINION

WINTHROP, Judge.

¶ 1 The State, through the Maricopa County Attorney's Office ("MCAO"), appeals from the trial court's orders finding that probable cause does not exist to detain Wilputte S. ("W.S.") as a sexually violent person ("SVP") and releasing W.S. from the custody of the Arizona Community Protection and Treatment Center. For the reasons discussed, we affirm the trial court's orders.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 On June 15, 1993, W.S. pled guilty to one count of attempted sexual conduct with a minor and one count of attempted sexual exploitation of a minor. On August 27, 1993, the trial court sentenced W.S. to the presumptive term of ten years' incarceration in the Arizona Department of Corrections ("ADOC") for the attempted sexual conduct and lifetime probation for the attempted sexual exploitation.

¶ 3 On August 15, 2003, the State, through the MCAO, filed a petition pursuant to Arizona Revised Statutes ("A.R.S.") section 36–3704 (2003) to detain W.S. beyond his scheduled release date of August 25, 2003, on the basis that he is an SVP. The MCAO attached to the petition the discharge report from ADOC, and included reports from two mental health professionals, Dr. Sergio I. Martinez and Dr. Barry Morenz.

¶ 4 Dr. Martinez, a forensic licensed psychologist, evaluated W.S. on May 27, 2003, and concluded that, to a reasonable degree of psychological certainty, W.S. is not an SVP. As a result, Dr. Martinez recommended that W.S. not be referred to the MCAO for a determination regarding the filing of an SVP petition. Dr. Morenz, an associate professor of clinical psychiatry, evaluated W.S. on August 8, 2003 [1], and recommended that W.S. be referred "for the filing of a petition alleging he is a sexually violent person." After reviewing the allegations in the petition, the trial court, pursuant to A.R.S. § 36–3705(B) (2003), ordered that W.S. be transferred to the Arizona Community Protection and Treatment Center upon his release from ADOC.

¶ 5 On October 17, 2003, the trial court held a probable cause hearing pursuant to § 36–3705(D). At the hearing, counsel for W.S. argued that, because § 36–3702(B)(9)(a) [2] states that the discharge report from ADOC must contain "[a] report of the person's condition," and because the petition was submitted with two mental health assessment reports instead of one, the petition was fundamentally flawed. Counsel further argued that the State should not be

---

1. By statute, the discharge report is required to be submitted to the MCAO no later than thirty days prior to the scheduled release date. *See* A.R.S. § 36–3702(A) (2003). Assuming ADOC timely complied with § 36–3702(A), its discharge report could not have included Dr. Morenz's report.

2. Section (B)(9)(a) provides as follows:

**B.** The agency [that has jurisdiction over a person who may be an SVP] shall provide the county attorney or attorney general with the following to support the written request that a petition be filed:

    . . . .

9. A final release or discharge report, together with any information on which the report is based, that is prepared in anticipation of either the person's release from incarceration or commitment. The report shall include:

(a) A report of the person's condition that was completed within the preceding one hundred and twenty days and that includes an opinion expressing to a reasonable degree of psychiatric, psychological or professional certainty that the person has a mental disorder and that, as a result of that mental disorder, the person is likely to engage in a sexually violent offense.

allowed to "opinion shop." Counsel for the MCAO acknowledged that "this is the first time that our office has seen multiple submissions," and she could not explain why a second opinion had been obtained. Nonetheless, she argued that, although the statute requires one expert report, it does not preclude a second opinion.

¶ 6 The trial court interpreted A.R.S. § 36–3702(B)(9)(a) as precluding ADOC from obtaining more than one mental health evaluation report. Although the court acknowledged that requiring the State to accept the first opinion it solicited and received "may be unduly harsh," the court further reasoned that allowing the State to obtain multiple opinions to obtain a desired result would be "unfair." Accordingly, the court dismissed the petition, finding "that a basis of probable cause does not exist under which to detain the Respondent."

¶ 7 The State filed a notice of appeal. We have appellate jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) (2003) and 12–2101(B) (2003).

## ANALYSIS

¶ 8 The State argues that the trial court erred in dismissing the petition because the court incorrectly interpreted A.R.S. § 36–3702(B)(9)(a), which required the State to submit "a" mental health report, as prohibiting ADOC from submitting more than one expert opinion as part of the discharge report. Relying on A.R.S. §§ 1–214(B) (2002) [3] and 1–211(A) (2002),[4] the State argues that the trial court's interpretation of the word "a" to mean "only one" is incorrect because we must interpret A.R.S. § 1–214(B) as dictating that A.R.S. § 36–3702(B)(9)(a) be construed to employ both singular and plural meanings. Thus, the State concludes, it is permitted to submit two reports by mental health experts, and the trial court erred in dismissing the case. The State further argues that submission of the two evaluations, rather than being fundamentally unfair, actually caused W.S. to be treated more fairly than required because the court had more information than usual to make the probable cause determination.

¶ 9 W.S. argues that the language of A.R.S. § 36–3702(B)(9)(a) is clear and unambiguous, and that interpreting § 36–3702(B)(9)(a) in light of A.R.S. § 1–214(B) would be inconsistent with other portions of the SVP statutes that use the words "a" or "an" to indicate an amount of "one." See, e.g., A.R.S. § 36–3703(A) (2003) (using the terms "an examination" and "a competent professional").

¶ 10 Although we ultimately decide whether the trial court abused its discretion by dismissing the petition, we review *de novo* issues that involve interpretation of the SVP statutes. See *State v. Hoggatt,* 199 Ariz. 440, 442, ¶ 4, 18 P.3d 1239, 1241 (App.2001); *Walter v. Wilkinson,* 198 Ariz. 431, 434, ¶ 15, 10 P.3d 1218, 1221 (App.2000). "Our primary goal in construing a statute is to determine and give effect to legislative intent." *State v. Flynt,* 199 Ariz. 92, 94, ¶ 5, 13 P.3d 1209, 1211 (App.2000) (citation omitted). We look first to a statute's language and strive to interpret the statute so as to give it a fair and sensible meaning. See *id.; Walter,* 198 Ariz. at 432, ¶ 6, 10 P.3d at 1219. "If reasonably practical, a statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent." *State ex rel. Larson v. Farley,* 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970). "When statutory language is subject to differing interpretations ..., we must consider the consequences of alternative statutory constructions to see what light they shed on the proper interpretation of the statute." *Walter,* 198 Ariz. at 433, ¶ 10, 10 P.3d at 1220 (citing *Bustos v. W.M. Grace Dev.,* 192 Ariz. 396, 398, 966 P.2d 1000, 1002 (App.1997)).

¶ 11 We do not interpret A.R.S. § 36–3702(B)(9)(a) as categorically precluding the submission and potential use of more than one mental health evaluative report. The

---

3. Section 1–214(B) states, "Words in the singular number include the plural, and words in the plural number include the singular."

4. Section 1–211(A) states, "The rules and the definitions set forth in this chapter shall be observed in the construction of the laws of the state unless such construction would be inconsistent with the manifest intent of the legislature."

legislature could not reasonably have intended that, when the State can demonstrate a good faith objective basis for the necessity of a subsequent evaluative report, such a report may not be obtained. *See Bustos,* 192 Ariz. at 398, 966 P.2d at 1002 (recognizing that statutory interpretations should not lead to absurd results).

¶ 12 However, just as the legislature could not have intended to preclude a subsequent report in all circumstances, fundamental fairness and reason dictate that the legislature also could not have intended to subject a person to multiple examinations until the State is able to obtain a favorable opinion to support an SVP petition. *See id.* The plain language of A.R.S. § 36–3702(B)(9)(a) provides for "a" report. Thus, under § 36–3702(B)(9)(a), the presumptive number of reports is one, and we conclude that, absent necessary and proper justification, the State is precluded from directing subsequent evaluations and obtaining subsequent reports.

¶ 13 Based on the record before us, we find no abuse of the trial court's discretion. This is not simply a situation in which an evaluator was provided additional information to consider after the same evaluator had made an initial determination. Here, a second evaluator was employed and a second evaluation conducted, and the State has never explained why this occurred. We recognize that the first evaluation of W.S. was conducted on May 27, 2003, and the second evaluation was conducted more than two months later, on August 8, 2003, and an argument potentially exists that a more recent evaluation might be more accurate and/or predictive of post-release behavior. However, absent more, we do not find the mere passage of time sufficient to justify a subsequent evaluation.[5] The State has not alleged, much less shown, that Dr. Martinez lacked the qualifications or competency necessary to perform the evaluation; that Dr. Martinez used improper methodology; that the test data was incomplete or improperly interpreted; that other errors or omissions occurred in the initial evaluation process that materially affected Dr. Martinez's recommendation;

or that material changes in circumstances or conditions had occurred since the first evaluation. In fact, the record contains nothing justifying or explaining the need for the second evaluation. Because no justification was provided for conducting a subsequent evaluation and obtaining another evaluative report, we find that the trial court did not abuse its discretion in precluding the second report and dismissing the petition.

## CONCLUSION

¶ 14 The trial court's orders dismissing the petition and releasing W.S. are affirmed.

CONCURRING: SUSAN A. EHRLICH, Presiding Judge and ANDREW W. GOULD, Judge Pro Tempore.*

---

**5.** We also do not find availing the fact that W.S. apparently consented to the second evaluation, absent some indication that he was informed he might have the right to decline to participate due to completion of the first evaluation.

* NOTE: The Honorable Andrew W. Gould, Judge of Yuma County Superior Court, was authorized by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this appeal pursuant to the Arizona Constitution, Article 6, Section 3, and A.R.S. §§ 12–145 to –147 (2003).