271 P.3d 486

**In re ERIC W.**

**No. 1 CA–JV 10–0141.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 23, 2012.

---

William G. Montgomery, Maricopa County Attorney By Linda Van Brakel, Deputy County Attorney, Phoenix, Attorneys for Appellant State of Arizona.

Law Office of Robert P. Jarvis, P.L.C. By Robert P. Jarvis, David L. Anderson, Mesa, Attorneys for Appellee Eric W.

## OPINION

WINTHROP, Judge.

¶ 1 The State of Arizona, by and through the Maricopa County Attorney, appeals the juvenile court's order dismissing with prejudice delinquency petitions filed against Eric W. ("Juvenile"). The primary issue presented in this case is whether the statutory time limits for restoring a juvenile to competency, which limit the time a juvenile may be ordered to participate in a restoration program, also incorporate the time in which the juvenile court must conclude all competency proceedings. We hold that they do not. Instead, we hold that although a final mental health evaluation must be conducted on the juvenile's competency within the statutory restoration program period of either 180 days, see Ariz. Rev. Stat. ("A.R.S.") § 8–291.09(F) (West 2011),[1] or 240 days, see A.R.S. § 8–291.10(F), the statutes do not require that the subsequent court hearing to determine the competency issue also be held within the same period. We further hold that the timing of the submission of the expert's final written report in this matter, although consistent with A.R.S. § 8–291.10(A)(2), violated A.R.S. § 8–291.10(A)(4) because it was not filed fourteen days before the expiration of the maximum term of the restoration order. The timing of the report's submission, however, is a procedural requirement that, on this record, did not prejudice Juvenile's substantive rights. Consequently, we reverse the juvenile court's order and remand for a competency hearing, followed by further proceedings consistent with the competency determination and the juvenile competency statutes.

## FACTS AND PROCEDURAL HISTORY [2]

¶ 2 On July 16, 2009, Phoenix police responded to a call advising them that a witness had observed an eight-year-old female wearing only her underwear run out of a storage shed screaming and crying. A young male also exited the shed and entered a nearby apartment. The police learned that the girl had been coaxed into the shed with the offer of chewing gum, and several boys,

1. Throughout this opinion, we cite the most current version of each statute as it appears in Westlaw because no revisions material to our analysis have since occurred.

2. We view the facts in the light most favorable to sustaining the juvenile court's determination. See In re John M., 201 Ariz. 424, 426, ¶ 7, 36 P.3d 772, 774 (App.2001); State v. Kiper, 181 Ariz. 62, 64, 887 P.2d 592, 594 (App.1994).

including Juvenile, had engaged in sexual acts with her.

¶ 3 Six days later, the State filed a delinquency petition, charging Juvenile, a Liberian refugee who was then twelve years old, with three counts of sexual assault and one count of kidnapping, all class two felonies, in violation of A.R.S. §§ 13–1406 and 13–1304. The case was initially assigned to Judge Crane McClennen. At an advisory hearing, Juvenile denied the allegations of the petition, but the juvenile court found that probable cause existed to believe he had committed the alleged acts, and ordered that he be detained.

¶ 4 Shortly thereafter, Juvenile's counsel filed a motion requesting that Juvenile be evaluated for mental competency to participate in the legal proceedings. *See* A.R.S. § 8–291.01(B).[3] The juvenile court ordered the evaluation and appointed two mental health experts to serve as evaluators:[4] Julio Ramirez, Ph.D. and John Raney, M.D. The court also scheduled a mental competency hearing for September 24, 2009, and ordered the mental health experts to submit their reports to Juvenile's counsel by September 14.[5]

¶ 5 Both doctors timely submitted an evaluation. Dr. Ramirez opined in his report that Juvenile was competent to stand trial; Dr. Raney concluded that Juvenile was not competent, but could "be brought to a state of competence within the statutory time limit of six months." *See* A.R.S. § 8–291.07(B)(4), (C)(3).

¶ 6 At the mental competency hearing,[6] and after considering the reports and consulting with the parties, the court found Juvenile incompetent to stand trial, but also found "a likelihood that [he] may be restored to competency within the statutory time frame." The court ordered that Juvenile cooperate with and participate in a restoration program,[7] appointed Dr. Lawrence Allen, Ph.D., to evaluate Juvenile's progress in the program, appointed a guardian ad litem to represent Juvenile, and scheduled an advisory/restoration review hearing for November 23, 2009.

¶ 7 In his November 16, 2009 restoration assessment report, Dr. Allen opined that Juvenile remained incompetent, but "there remains substantial probability the juvenile will become competent during the statutory period." At the November 23, 2009 advisory/restoration review hearing, after considering Dr. Allen's report, the court determined Juvenile remained incompetent, but a substantial probability existed that he could be restored to competency within the statutory time frame. The court continued Juvenile in the restoration program, ordered that he submit to a psychosexual evaluation before considering his release from detention, ordered Dr. Allen to complete and distribute an updated report by December 18, and scheduled an

3. *See also* A.R.S. § 8–291.01(A) ("A juvenile shall not participate in a delinquency, incorrigibility or criminal proceeding if the court determines that the juvenile is incompetent to proceed."). A juvenile determined to be "incompetent" is one "who does not have sufficient present ability to consult with the juvenile's lawyer with a reasonable degree of rational understanding or who does not have a rational and factual understanding of the proceedings against the juvenile. Age alone does not render a person incompetent." A.R.S. § 8–291(2).

4. *See* A.R.S. § 8–291.02(A) (requiring the court to appoint two or more mental health experts to examine the juvenile, issue a report, and, if necessary, testify as to the juvenile's competency).

5. Meanwhile, on August 3, 2009, the State filed an amended delinquency petition against Juvenile, alleging three additional counts of sexual conduct with a minor under the age of fifteen, a class two felony, in violation of A.R.S. § 13–1405. The State also filed a motion for a trans-

fer hearing. *See* Ariz. R.P. Juv. Ct. 34(A) (providing that, upon motion by the prosecutor, the juvenile court may waive jurisdiction and order the transfer of a juvenile to the appropriate court for criminal prosecution). The court stayed the transfer hearing pending determination of Juvenile's competency. *See* Ariz. R.P. Juv. Ct. 34(E)(3) ("The court shall not transfer a juvenile for criminal prosecution who is not competent."). Juvenile was not formally advised of the amended petition or transfer request because of the competency proceedings.

6. *See* A.R.S. § 8–291.08(A) (providing for a hearing within thirty days after the mental health experts' competency reports are filed).

7. If the court initially finds a juvenile is incompetent but may be restored, the court shall order that the juvenile undergo an attempt at restoration to competency. A.R.S. § 8–291.08(C).

advisory/restoration review hearing for January 7, 2010. Due to judicial rotation, the case was reassigned to Commissioner Shellie Smith in December 2009.

¶ 8 In his December 18 restoration assessment report, Dr. Allen concluded that Juvenile remained incompetent, but had made "substantial progress," and a "substantial probability" existed he would become competent within the statutory period. At the January 7, 2010 advisory/restoration review hearing, after considering Dr. Allen's most current report, the court found Juvenile remained incompetent to stand trial, but a substantial probability continued to exist that he could be restored to competency within the statutory time frame. The court ordered that Juvenile continue in the restoration program, be released from detention, and appear at the next advisory/restoration review hearing, which the court scheduled for March 8, 2010.

¶ 9 In his March 3, 2010 report, Dr. Allen opined that Juvenile remained incompetent but had "made substantial progress in learning the necessary information to be considered competent," and although he had made only "limited progress since the last evaluation session," "he may not have made his best effort in this assessment." Because the 180–day period for restoration services would soon elapse, see A.R.S. § 8–291.09(F), and a reasonable probability existed that Juvenile would learn the necessary information if given more time, the doctor recommended "an extension of services for an additional 60 days beyond the 180 day limit." [8]

¶ 10 At the March 8 advisory/restoration review hearing, the court considered Dr. Allen's most current report and found that Juvenile remained incompetent to stand trial, but a likelihood continued to exist that he could be restored to competency within the extended time frame. The court ordered that Juvenile continue in the restoration program and extended the restoration period for an additional sixty days, approved additional time for restoration services during those

sixty days, and directed that a new report be prepared at the end of the sixty-day extension. After the court had indicated it would grant the sixty-day extension, the following discussion occurred:

[JUVENILE'S COUNSEL]: ... As far as timing goes, Your Honor, I have the 180 days up on March 25th[9]—

THE COURT: Okay. So—

[JUVENILE'S COUNSEL]: —so that 60 days would be from that time; is that correct?

THE COURT: Okay. So 60 days from March 25. Does the State disagree with that date?

[JUVENILE'S COUNSEL]: I have the beginning date of September 24 of 2009 when the order—Judge McClennen ordered the restoration.

[STATE'S COUNSEL]: That's correct, Your Honor.

THE COURT: Okay. Then we'll do 60 days from March 25, actually, let's do—

The court then scheduled the next advisory/restoration review hearing for June 14, 2010. Neither counsel objected to this schedule.

¶ 11 Approximately seven weeks later, on April 27, 2010, Juvenile's counsel filed a motion to accelerate the restoration review hearing scheduled for June 14. In the motion, counsel noted the court had found Juvenile incompetent on September 24, 2009, and calculated that made March 23, 2010, the 180–day deadline for restoration. Counsel acknowledged that the court had extended the restoration process for sixty days, making May 22, 2010, a Saturday, the new last day for restoration based on a 240–day deadline. Counsel noted that the current date set for the review hearing (June 14) was twenty-three days past that last day (May 22), maintained the final restoration report was due fourteen days before the 240–day deadline (May 8), and added that, pursuant to A.R.S. § 8–291.10(H), if Juvenile was not restored or restorable by the deadline, the charges

---

8. See A.R.S. § 8–291.10(F) (providing that "the court may extend the restoration program period for an additional sixty days for good cause").

9. The 180th day from the court's initial finding of incompetency (September 24, 2009) was actually March 23, 2010.

must be dismissed with prejudice. On May 18, 2010, the juvenile court issued an order accelerating the restoration review hearing to May 20, 2010.

¶ 12 At the accelerated May 20 restoration review hearing, the parties disagreed whether the 240–day deadline for completion of restoration meant the review hearing needed to be held within that period. Juvenile's counsel argued that the entire restoration and legal process, including the final restoration review hearing, was required to be completed within the 240–day statutory period and further maintained that, because Dr. Allen had not prepared a report at least fourteen days before May 22, the doctor's previous report became the default position, which mandated a dismissal with prejudice. The guardian ad litem joined in the argument of Juvenile's counsel. The court stated it was "not sure that the hearing has to be within the 240 days," indicating that it believed the entire 240–day period could be used for restoration, and surmised that "if the State is entitled to 240 days of restoration education, ... but the Court makes a decision based on a report 60 days ago or a meeting 60 days ago, I don't think that's in compliance with the statute either." The State argued both that Juvenile's counsel had waived any timeliness argument by failing to object when the court set the final hearing for June 14, and that the applicable statutes allowed for restoration through the 240th day, after which a report should be prepared and distributed to the parties, and then a hearing held.

¶ 13 Because Dr. Allen had not yet evaluated Juvenile to prepare an updated restoration report, the court ordered Juvenile to meet for an interview the next day with the doctor, who was appearing telephonically and agreed that he could prepare a written report and submit it to the parties within seven days after meeting with Juvenile. The court set the next advisory/restoration review hearing for June 14, 2010, as previously scheduled.

¶ 14 Dr. Allen evaluated Juvenile on May 21, 2010. On May 28, the doctor prepared a restoration assessment report, in which the doctor opined that Juvenile was presently competent to proceed. Due to judicial rotation, the case was reassigned to Judge Bethany G. Hicks in early June.

¶ 15 At the June 14, 2010 hearing, Juvenile's counsel renewed his argument that Dr. Allen's restoration assessment report and the hearing were untimely.[10] After argument by counsel and the guardian ad litem, the court dismissed with prejudice the delinquency petitions. The court's minute entry states in pertinent part as follows:

The Court has reviewed the file, including the undated report from Dr. Lawrence Allen indicating that the juvenile is now competent after an evaluation conducted on May 21, 2010.

Counsel for the juvenile objects to the submission of the report based on the time line and indicates that a competency finding was not made within the statutory time limits.

The State argues that the juvenile was restored within the statutory time frame and orally moves for a finding of competency.

The guardian ad litem agrees with juvenile's counsel and requests that the petitions be dismissed with prejudice. Counsel advises the Court she has not found grounds to file a dependency petition.

Counsel present oral argument.

Based on the matters presented,

THE COURT FINDS that the report was not filed 14 days before the maximum term of 240 days. There has not been a judicial finding of competency. Therefore, under A.R.S. § 8–291.08(d),[11]

10. Because the parties do not raise the issue, we make no comment whether counsel's argument constituted an improper horizontal appeal. *See, e.g., Bowman v. Bd. of Regents,* 162 Ariz. 551, 554, 785 P.2d 71, 74 (App.1989) (citations omitted), *superseded on other grounds by rule as stated in Larkin v. State ex rel. Rottas,* 175 Ariz. 417, 424–25, 857 P.2d 1271, 1278–79 (App.1992).

11. Subsection (D) of A.R.S. § 8–291.08 provides in part as follows: "If the court *initially* finds that the juvenile is incompetent and there is not a substantial probability that the juvenile will be restored to competency within two hundred forty days, the court shall dismiss the matter with prejudice and shall initiate civil commitment proceedings, if appropriate." (Emphasis added.) Given this statute's placement and context in the

THE COURT FURTHER FINDS that the juvenile was not restored to competency within the statutory time frame.

IT IS THEREFORE ORDERED dismissing the petition/citation(s) filed 7/22/2009 and 8/3/2009 with prejudice.

IT IS FURTHER ORDERED terminating restoration services in this matter.

¶ 16 The State filed a timely notice of appeal. We have appellate jurisdiction pursuant to A.R.S. § 8235(A) and Rule 103(A), Ariz. R.P. Juv. Ct.

## ANALYSIS

¶ 17 The State maintains that the juvenile court erred in dismissing with prejudice the delinquency petitions for failure to restore Juvenile to competency within 240 days. The State argues that the juvenile court erred in finding that Dr. Allen's final restoration review report was not timely filed because it was not filed fourteen days before the expiration of the 240–day restoration order, concluding that Juvenile was not restored to competency within the statutory time frame, and dismissing with prejudice the petitions.[12]

¶ 18 Although we ultimately decide whether the juvenile court abused its discretion in dismissing the petitions, see In re Erika V., 194 Ariz. 399, 400, ¶ 2, 983 P.2d 768, 769 (App.1999), we review de novo issues that involve interpretation of the juvenile competency statutes. In re Hyrum H., 212 Ariz. 328, 330, ¶ 10, 131 P.3d 1058, 1060 (App.2006) (citing Linda V. v. Ariz. Dep't of Econ. Sec., 211 Ariz. 76, 78, ¶ 7, 117 P.3d 795, 797 (App.2005)). "Our primary goal in construing a statute is to determine and give effect to legislative intent." In re Wilputte S., 209 Ariz. 318, 320, ¶ 10, 100 P.3d 929, 931 (App.2004) (quoting State v. Flynt, 199 Ariz. 92, 94, ¶ 5, 13 P.3d 1209, 1211 (App.2000)). In our analysis, we look first to a statute's

language, and we strive to interpret the statute in a way that gives it a fair and sensible meaning. Id. (citing Flynt, 199 Ariz. at 94, ¶ 5, 13 P.3d at 1211; Walter v. Wilkinson, 198 Ariz. 431, 432, ¶ 6, 10 P.3d 1218, 1219 (App.2000)). "If reasonably practical, a statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent." Id. (quoting State ex rel. Larson v. Farley, 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970)). Additionally, "[w]hen statutory language is subject to differing interpretations . . ., we must consider the consequences of alternative statutory constructions to see what light they shed on the proper interpretation of the statute." Id. (quoting Walter, 198 Ariz. at 433, ¶ 10, 10 P.3d at 1220). The juvenile court may not misapply the law or a legal principle in exercising its discretion. Erika V., 194 Ariz. at 400, ¶ 2, 983 P.2d at 769 (citing Maricopa County Juv. Action No. JV–128676, 177 Ariz. 352, 353, 868 P.2d 365, 366 (App.1994)).

¶ 19 The juvenile competency statutes reflect the legislature's careful attempt to balance the right of the State to attempt to restore an incompetent juvenile to competency with the right of the individual juvenile to due process. Under A.R.S. § 8–291.09(F), a restoration order is valid for 180 days from the date of the initial finding of incompetency or until, inter alia, "[t]he restoration program submits a report that the juvenile has regained competency or that there is no substantial probability that the juvenile will regain competency within the period of the order." Additionally, at a hearing based on the consulting mental health expert's report filed "[f]ourteen days before the expiration of the maximum term of the restoration order," the juvenile court may extend the 180–day restoration program period for an additional sixty days. See A.R.S. § 8–291.10(F) (incor-

---

statutory scheme, it appears that subsection (D) is designed to address the situation in which the court determines before issuing a restoration order that a juvenile is incompetent and no substantial probability exists that the juvenile will be restored to competency within two hundred forty days. In this case, the proper statute for the court to have cited for dismissal with prejudice

after restoration orders had been implemented was A.R.S. § 8–291.10(H).

12. The State also argues that, even if the statutory time limits were violated, Juvenile invited any error and waived any objection by failing to timely object. Our resolution of this appeal eliminates the need to address this issue.

porating A.R.S. § 8–291.10(A)(4)).[13] Thus, the restoration program period for a juvenile may continue for a total of 240 days.

¶ 20 All court-ordered juvenile restoration orders require periodic progress reports. *See* A.R.S. §§ 8–291.08(E)(5) ("All restoration orders that are issued by the court shall specify the ... frequency of reports."), – 291.10(A)(1)–(4). In addition to reports, the juvenile competency statutes provide for periodic progress hearings. These hearings may be permissive, *see* A.R.S. § 8–291.10(C) (providing that the court *may* hold a progress hearing on the request of the prosecutor, the defense attorney, or the guardian ad litem), or mandatory. *See* A.R.S. § 8–291.10(D)(1)–(3) (providing that the court *shall* hold a hearing to determine the juvenile's progress toward regaining competency (1) on the court's own motion, (2) on receipt of a report submitted pursuant to A.R.S. § 8–291.10(A), and (3) not less than three months before the juvenile's eighteenth birthday).

¶ 21 If at a hearing conducted to determine the juvenile's progress toward regaining competency, *see* A.R.S. § 8–291.10(D), the court finds the juvenile has regained competency, "the juvenile shall be returned to the juvenile court and the proceedings against the juvenile shall continue in juvenile court without delay." A.R.S. § 8–291.10(E). However, if at a hearing pursuant to A.R.S. § 8–291.10(C), (D)(1), or (D)(2), "the court finds that the juvenile is incompetent to proceed and that there is not a substantial probability that the juvenile will regain competency within two hundred forty days after the date of the original finding of incompetency, the court shall dismiss the charges with prejudice and shall initiate civil commitment pro-

ceedings, if appropriate." A.R.S. § 8–291.10(H).

¶ 22 In this case, on September 24, 2009, the juvenile court determined that Juvenile was not competent but restorable. Under A.R.S. § 8–291.09(F), the court's restoration order was valid for 180 days, or until March 23, 2010. Based on Dr. Allen's March 3 report, which was filed at least fourteen days before expiration of the 180–day order, the court properly extended the restoration period for sixty days, or until May 22, 2010.[14] *See* A.R.S. § 8–291.10(F). Thus, the statutes provide for a 240–day restoration program period, after which the program is to be terminated. *Cf. Nowell v. Rees*, 219 Ariz. 399, 406, ¶ 21, 199 P.3d 654, 661 (App.2008) ("If a [criminal] defendant has not regained competency within twenty-one months of the original finding of incompetency, no further attempts at restoration are allowed."). In other words, under a plain reading of the statutes, the State had up to "two hundred forty days after the date of the original finding of incompetency" to restore Juvenile to competency. A.R.S. § 8–291.10(H); *accord* A.R.S. § 8–291.10(F). Dr. Allen's May 21 evaluation of Juvenile, conducted one day before the statutory 240–day period expired, led the doctor to conclude that Juvenile did gain competency within the statutory period. Although the applicable statutes limited the time that Juvenile was required to participate in the restoration program in an effort to gain competency, nothing in the plain wording of the juvenile competency statutes required the court to hold the final restoration review hearing and make its final competency determination before expiration of the restoration order and/or *within* the 240–day restoration program period.[15] *See* A.R.S.

---

**13.** The full text of A.R.S. § 8–291.10(F) is as follows:

If at a hearing based on a report that is filed pursuant to subsection A, paragraph 4 of this section the juvenile court finds that the juvenile has not been restored to competency but that the juvenile has made substantial progress toward restoration to competency, the court may extend the restoration program period for an additional sixty days for good cause if the court determines by clear and convincing evidence that further participation will lead to restoration to competency.

**14.** Juvenile argues that this court should affirm dismissal of the delinquency petitions on the basis that the juvenile court abused its discretion in ordering the restoration period extended sixty days despite his objection. We find no abuse of the court's discretion.

**15.** Further, although A.R.S. § 8–291.10(D)(2) directs the juvenile court to hold a hearing on receipt of a report submitted by the mental health expert consulting with the restoration program, the statute provides no specific timeline for such a hearing.

§§ 8–291 to –291.11; *see also State v. Ceja,* 113 Ariz. 39, 43, 546 P.2d 6, 10 (1976) (concluding that a rule putting a thirty-day limitation on confinement within a mental health facility did not place a time limit on holding competency hearings); *Nowell,* 219 Ariz. at 406, ¶ 21, 199 P.3d at 661 (disagreeing with a trial court's statutory interpretation that was "contrary to the plain meaning of the statutes").

¶ 23 Certainly, as the juvenile competency statutes make clear, the legislature knew how to impose a specific time limit for the final hearing and competency determination and could have incorporated the final hearing and competency determination within the 240–day restoration program period had the legislature chosen to do so. *See, e.g.,* A.R.S. §§ 8–291.04(B) (requiring parties to provide the juvenile's records to the appointed mental health experts within three working days after a motion for a competency examination is granted), –291.04(G) (limiting the detention period for a juvenile's inpatient examination to thirty days, with a provision for an extension of fifteen days if extraordinary circumstances exist), –291.07(A) (requiring a mental health expert's report to be submitted within ten working days after an examination), –291.08(A) (requiring the court to hold a hearing within thirty days after a report is filed pursuant to A.R.S. § 8–291.07),[16] –291.10(D)(3) (requiring the court to hold a competency hearing not less than three months before the juvenile's eighteenth birthday).[17] We conclude that the juvenile competency statutes provide for the statutory restoration program to proceed for the full 240 days if necessary, and only afterward must the court hold a final hearing to determine competency. *Cf. State v. Silva,* 222 Ariz. 457, 461, ¶ 18, 216 P.3d 1203, 1207 (App.2009) (holding that because "[t]he twenty-one month limit in the statute and rule

governing [criminal] competency proceedings applies only to restoration treatment orders during an accused's incompetency, not the superior court's authority to determine competency," the defendant's claim conflated the authority to order restoration treatment with the authority to determine competency).

■ ¶ 24 Further, to the extent that the juvenile court based its decision to dismiss the petitions with prejudice on the court's finding that Dr. Allen's May 28 report "was not filed 14 days before the maximum term of 240 days," we conclude that it erred. Under A.R.S. § 8–291.10(A), "[t]he mental health expert who consults with the restoration program shall submit a written report to the court before any hearing that is held pursuant to this section." Subsection (A) imposes additional requirements, including the following:

A report shall be filed as follows:

1. Every sixty days.

2. Whenever the mental health expert believes the juvenile is competent to proceed.

3. Whenever the mental health expert believes that there is no substantial probability that the juvenile will regain competency before the expiration of the order for participation in a competency restoration program.

4. Fourteen days before the expiration of the maximum term of the restoration order.

A.R.S. § 8–291.10(A)(1)–(4). Thus, subsection (A) requires the consulting mental health expert to file periodic sixty-day progress reports, a report fourteen days before the expiration of the maximum term of the restoration order, and a report *at any time* ("[w]henever") the expert determines the juvenile has become competent within the res-

---

16. *Compare* Ariz. R.Crim. P. 11.5(a) (directing the court to hold a hearing to determine a defendant's competency within thirty days after expert reports have been submitted).

17. Also, from a policy and logistical standpoint, it would make little sense to require that the final hearing and competency determination be condensed into the 240–day restoration program period. Such a requirement would fail to account for the possibility of a lengthy contested hearing

involving complex issues, and might invoke due process issues given the limited preparation time afforded the parties and the fact that the juvenile competency statutes do not expressly provide for excluding time. *See generally Nowell,* 219 Ariz. at 406, ¶ 22, 199 P.3d at 661 (declining to read an exclusion of time for restoration efforts of a criminal defendant into the applicable statutes or rules).

toration period or no substantial probability continues to exist that the juvenile will timely gain competency. Accordingly, nothing precluded Dr. Allen from filing a report shortly after the statutory 240–day restoration program period opining that Juvenile had been restored to competency within the statutory period. In fact, under the plain wording of subsection (A)(2)—and the May 20 order of the court [18]—he was required to do so if he came to that conclusion. Further, after receiving that report, the court was required to hold a hearing to determine Juvenile's progress toward regaining competency. *See* A.R.S. § 8–291.10(D)(2).

¶ 25 At the same time, however, although Dr. Allen's March 3 report was filed at least fourteen days before expiration of the 180–day restoration order, his May 28 report was not filed at least fourteen days before the expiration of the 240–day restoration order. *See* A.R.S. § 8–291.10(A)(4). The State argues that we should construe the statutory "maximum term" language of subsection (A)(4) as applying only to the 180–day restoration order. This we decline to do. As with Juvenile's argument regarding whether the final competency hearing must be held within the 240–day restoration program period, the State's argument here seeks to modify the plain language of the statute. *See Nowell,* 219 Ariz. at 406, ¶ 21, 199 P.3d at 661. Nothing in the express language of § 8–291.10(A) limits its application to a 180–day restoration order, and the legislature could have simply included that limiting language had it chosen to do so. We therefore conclude that the "maximum term" language in subsection (A)(4) applies to both the court's 180–day restoration order and any subsequent extension making the maximum term of the order 240 days. Therefore, we

agree with Juvenile that a written report should have been filed no later than May 8, which was fourteen days before the expiration of the additional sixty-day period.

¶ 26 Although Dr. Allen did not submit a report in compliance with A.R.S. § 8–291.10(A)(4), dismissal of the delinquency petitions was not required as a result. Indeed, we find nothing in the statutory scheme that authorized, much less required, the juvenile court to dismiss with prejudice the delinquency petitions against Juvenile on that basis, and we conclude that the court erred in relying on this noncompliance as a basis for dismissing the petitions. Neither A.R.S. § 8–291.10 nor any of the other juvenile competency statutes specifically provide for the imposition of a penalty or sanction for the failure to adhere to the fourteen-day filing requirement of subsection (A)(4), much less authorize dismissal of a petition with prejudice. Clearly, had the legislature wished to impose such a penalty, it could have done so. Moreover, the statutes authorizing a dismissal with prejudice require more than a mere finding that a report is noncompliant.[19] *See Nowell,* 219 Ariz. at 406, ¶ 21, 199 P.3d at 661 (finding that "the statutes mean what they say"). Given the lack of a statutory mandate to dismiss the case and the fact that Dr. Allen's final report was submitted to the court and the parties before the hearing on June 14, and was properly before the court for consideration based on subsection (A)(2) of A.R.S. § 8–291.10, we decline to read such a draconian remedy into the statutory scheme for what appears to be the failure to meet a procedural timeliness requirement, especially when Juvenile has not argued, much less demonstrated, that his substantive rights have been prejudiced. *See generally Padilla v. Superior Court,* 133 Ariz. 488, 490,

18. *See* A.R.S. § 8–291.08(E)(5) (providing that the court shall specify the frequency of reports in its restoration orders).

19. The subsections in the juvenile competency statutes that provide for dismissal with prejudice are A.R.S. §§ 8–291.08(D) and 8–291.10(G) and (H). Neither § 8–291.08(D) nor subsection (G) of § 8–291.10 applies in this context. Accordingly, the only statute the juvenile court could have relied on for dismissal with prejudice in this case was A.R.S. § 8–291.10(H), which predicates dismissal on a specific finding by the court that the

juvenile is incompetent to proceed and no substantial probability exists that the juvenile will regain competency within 240 days after the date of the original finding of incompetency. Although the juvenile court in this case found "that the juvenile was not restored to competency within the statutory time frame," the basis for its finding was "that the report was not filed 14 days before the maximum term of 240 days" and "[t]here has not been a judicial finding of competency."

652 P.2d 561, 563 (App.1982) ("A violation of the time limits for initial appearances under the Rules of Criminal Procedure does not carry an automatic sanction of dismissal." (citations omitted)); *State v. Mohave Cnty. Justice Court,* 141 Ariz. 342, 344, 686 P.2d 1312, 1314 (App.1984) (affirming the superior court's order dismissing a complaint without prejudice because, although the defendant had raised various arguments supporting a dismissal with prejudice, he had not shown "deliberate harassment" or prejudice affecting "the integrity of the truth finding process").

## CONCLUSION

¶ 27 The juvenile court erred in dismissing with prejudice the delinquency petitions against Juvenile. Consequently, we reverse the juvenile court's order and remand for a competency hearing, followed by further proceedings consistent with the competency determination and the juvenile competency statutes.

CONCURRING: PHILIP HALL, Presiding Judge, and JON W. THOMPSON, Judge.